THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* KENNETH M. GOBLE, Defendant-Appellant.

Second District (2nd Division)   No. 75-515

Opinion filed August 31, 1976.

492

Ralph Ruebner and Peter B. Nolte, both of State Appellate Defender's Office, of Elgin, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko and Christine Drucker, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE DIXON delivered the opinion of the court:

Defendant Kenneth Goble was indicted by a Winnebago County grand jury on one count of rape and two counts of indecent liberties with a child. Defendant waived a jury trial, and following a bench trial was found guilty on all three counts. Judgment was entered on one count of rape and one count of indecent liberties with a child, and defendant was sentenced to a term of 4 to 20 years on each count, sentences to be served concurrently.

On appeal, defendant contends (1) that he was denied due process of law by the allowance of testimony concerning a pretrial lineup and subsequent in-court identification, (2) that the State failed to prove him guilty beyond a reasonable doubt, (3) that the court erred in finding the 7-year-old brother of the complaining witness competent to testify, (4) that he was denied a fair trial by the introduction of evidence of telephone "traps", and (5) that the court erred in entering judgments and sentence on the indecent liberties counts as those offenses were not sufficiently distinct from the offense giving rise to the rape conviction.

We first deal with defendant's contention that he was denied due process of law when the court allowed testimony concerning an alleged unnecessarily suggestive pretrial lineup and subsequent in-court identification, allegedly tainted by that suggestive lineup. Defendant was arrested May 15, 1974, on a criminal complaint of disorderly conduct and placed in a lineup later that day. His attorney was present at the lineup, having been generally informed that the defendant was under suspicion for a charge of indecent liberties or sexual assault of a child. The lineup was viewed, separately, by the 11-year-old complaining witness and her 7-year-old brother, both of whom, again separately, identified the defendant as the assailant. Subsequently, the defendant moved to suppress testimony regarding the lineup and any in-court identification. The court denied the defendant's motion. We find that the lineup was not unnecessarily suggestive and therefore need not reach the question of whether the in-court identification had an independent basis, and need not reach the State's contention that the presence of defendant's counsel at the lineup precludes defendant from later objecting to the identification procedures.

■■ The threshold question is whether the totality of the circumstances show that the confrontation conducted in this case was so unnecessarily suggestive and conducive to irreparable mistaken identification as to deny defendant the due process of law guaranteed him under the fifth and fourteenth amendments to the Federal Constitution. (*Stovall v. Denno* (1967), 388 U.S. 293, 301-02, 18 L. Ed. 2d 1199, 1206, 87 S. Ct. 1967.) The burden of proof is on the defendant to establish that the identification procedure was suggestive. *People v. Watkins* (1970), 46 Ill. 2d 273.

The elements of suggestiveness alleged by the defendant in this case are as follows. The description given by the complaining witness on the day of the offense, July 26, 1973, was that the offender was more than 6 feet tall, medium build, 25-30 years old with dark brown hair which was "kind of stubby around his face and short," wearing wire-framed sun glasses, and that he did not have a beard or moustache. In addition, a composite facial sketch was made by a police officer pursuant to information given by the victim. At the time of his arrest and appearance in the lineup, defendant was 29 years old and did not have a beard or moustache. The other four men in the lineup were all detectives in the Rockford Police Department. One man was approximately 40 years old and had a moustache, a second was 42 and did not have a moustache, a third was approximately 38 and did not have a moustache, and the fourth was 29 and had a moustache. The officer who selected the men to appear with defendant in the lineup testified at the suppression hearing that although he had not read the description, he was familiar with the composite and

selected the others based on it as well as the physical appearance of the defendant.

The record on appeal contains a copy of a photograph of the lineup. A review of that photograph reveals that all five men, including the defendant, are casually dressed in sports coat and open collared shirt, are of medium build, of approximately the same height, and have short dark hair. Although the testimony reveals an age difference between defendant and the other two men without facial hair, that age difference is not apparent from a viewing of the photograph, as the defendant appears older than his 29 years and of approximately the same age as the older detectives. We also note a resemblance between the composite drawing (a copy of which appears in the record as defendant's exhibit at trial) and a number of the men, including the defendant.

Viewing the totality of the circumstances then, we feel that the facts that the only other 29-year-old had a moustache, and that the testimony showed that the only other men without facial hair were approximately 10 years older than defendant, are not sufficient to show that the confrontation in this case was so unnecessarily suggestive as to be conducive to irreparable misidentification. We note that both children independently viewed the lineup and independently and unequivocally identified the defendant; and that there is no indication that he was pointed out to the children or that the children were told that the police had caught the culprit (see *United States v. Wade*, 388 U.S. 218, 232-33, 18 L. Ed. 2d 1149, 1161, 87 S. Ct. 1926). We therefore find that the court did not err in denying defendant's motion to suppress pretrial lineup and subsequent in-court identification.

Defendant's second contention is that the State failed to prove him guilty beyond a reasonable doubt. A brief presentation of the lengthy evidence is necessary at this point to properly dispose of this claim. On July 26, 1973, while only the complaining witness, 10-year-old Lorrie and her 6-year-old brother Jimmy were at home, a man came to their home between 5:30 and 6 p.m., asking if their daddy was at home. Lorrie testified that when she first saw him, he was standing outside the screen door. He asked some questions regarding her father, and then asked to use the bathroom. She testified that during this questioning she could see his face. She testified that he was behind her as she led him upstairs to the bathroom. As she turned to go to her room, he grabbed her from behind, pulled her into the bathroom, locked the door and told her to take off her shorts and lie on her back. He then unzipped his pants, put his penis in her vagina, put a washrag in her mouth, pulled her shirt up over her face, then pulled the shirt down, and put his penis in her mouth. He then got up, told her he would come back and kill her if she ever told anybody, unlocked the door and left, telling her to stay there 5 or 10 minutes.

She further testified this was not the first time she'd seen the man, that she had seen him in May of that year when he came to her house, asked to use the phone, looked at the phone book and left without using the phone. She admitted that when she'd first spoken to police, on the evening of the offense, she told them it was January when she previously saw the man, but that she later remembered the weather was warm so she now knew it was May. She gave a description of the man which fits the defendant except as to height; she said he was approximately 6' and defendant is 5'9". However, she also said he was wearing "today's look" two-tone shoes, and defendant testified he often wore shoes with 2" heels. On his first visit, she had observed him drive up in a car with two children, a girl about 2 and a boy of 6 or 7. She further testified that she next saw the man when she picked him out of a lineup at the police station in May 1974. Her 7-year-old brother Jimmy also testified to seeing the man on the two occasions at their home, and he independently also picked defendant out of the lineup. He further testified that he spoke to the boy in the car defendant drove up in both times, and, as he had told police the day of the offense, that the boy told him his name was "Shawn". Jimmy identified this boy out of a class of 38 children; the boy he pointed to was Sean Goble, defendant's son (though defendant testified his son was never called "Shawn"). Defendant had two children, Tina who was 3½ in July 1973 and Sean who was 6½ in July 1973.

Lorrie's mother testified that they had been receiving frequent annoyance phone calls prior to the rape, and that these calls started again two months after the rape. A telephone trap was put on their phone for various 1-week periods, but the calls only seemed to come when the trap was not on. However, the trap was on on Saturday May 11, 1974, at 4:10 a.m. and Sunday May 12 at 8:30 a.m. when they received two more of the annoyance calls (the calls were of a hang-up nature—the caller would just breathe and hang up). The traps revealed that both these calls had been made from the Elco Tool Company where defendant was a security guard on duty that weekend. There were some operations going on in the plant at 4:10 a.m. Saturday, but there was not a full force of employees present. All operations ceased at noon Saturday, and the plant was closed from noon Saturday until midnight Sunday night. Defendant was on duty as the only security guard from midnight Friday to 8 a.m. Saturday May 11, and from 4 a.m. to 4:30 p.m. Sunday, May 12. Defendant was responsible for insuring that all doors were locked and that no unauthorized persons were in the plant. A maintenance supervisor testified that defendant called him at 9 a.m. Sunday to report a malfunctioning furnace, and that he came to the plant at 9:30 a.m. to fix it, stayed one-half hour, and saw no one at the plant other than defendant. A vice-president testified he arrived at the plant with his family at 11:30 a.m.

(letting himself in with his own key) and that he saw no one there besides defendant. There was no proof that anyone other than defendant was in the plant at 8:15 a.m. Sunday when the annoyance call was made to the complaining witness' residence and defendant was the only person authorized to be in the plant at that time.

Defendant presented an alibi defense through his own testimony and that of his brother-in-law and a friend, that they were at defendant's home that evening from 5 until 9 p.m. and that defendant never left, and that even though they visit with defendant frequently they remember July 26, 1973, because it was defendant's birthday. Defendant also presented evidence that he had had a vasectomy in April 1972 and Dr. Taylor who performed the vasectomy testified that he examined specimens of defendant's semen in June 1972 and again in February 1975, just prior to trial, and that on both occasions defendant's semen contained no sperm; that it was his opinion that defendant was sterile from June 1972 through February 1975.

Dr. Blomberg, who treated the complaining witness in the emergency room approximately 2 hours after the rape, testified that he took internal and external smears of the vaginal areas of the victim, and upon microscopically examining these slides, found no evidence of sperm on either. He then left the slides in the lab. There was evidence that the complaining witness had not douched, and the Doctor testified that under those conditions he would normally expect to find many sperm.

Ms. Winterland, a cytologist, testified that the next morning she put the slides on a staining rack with 60 other slides, and put the rack through 17 different stains. She then examined the complaining witness' slides and found one sperm on the internal slide. She took this to Dr. Owano, a pathologist, who verified her finding. Ms. Winterland testified that while the slides were on the rack going through the staining process they were next to the slides of another suspected rape victim on whose internal and external slides were found thousands of sperm. There was testimony that it was possible for a cell to come loose from one slide during the staining process and lodge on another, but in the opinion of Ms. Winterland and Dr. Owano, the sperm in question was not a "floater".

Defendant's contention is that since he presented an unimpeached alibi and uncontradicted medical evidence that he could not have deposited the sperm found in the complaining witness, the State failed to prove him guilty beyond a reasonable doubt. The standard for review in this case was recently enunciated by our supreme court in *People v. Reese* (1973), 54 Ill. 2d 51, also a rape case tried to the bench:

> "Courts of review have a special duty of carefully examining the evidence in rape cases. [Citation.] But in doing so the court may not encroach upon the function of the trier of fact to weigh

credibility and otherwise assess the evidence which was presented. [Citation.] That evidence has been conflicting will not justify a reversal of a finding by the trier of fact. [Citations.] A court of review will not set aside a finding of guilty unless the evidence is so palpably contrary to the finding or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt as to the guilt of the accused." (54 Ill. 2d 51, 57-58.)

The court found in the instant case that taken as a whole the identification evidence and the independent corroboration of it was strong; especially the resemblance between the composite sketch drawn the day of the occurrence and the appearance of the defendant, and the link between the telephone calls and the defendant. The court found the alibi evidence to be inconclusive because of the time intervening between the evening in question and the trial combined with the great frequency of visits made by these witnesses to defendant's home. The court found that the very unlikely presence of a single sperm indicated that it was the result of an accident in the lab rather than of an ejaculation, and that it was thus not inconsistent with the proof that defendant was sterile.

■■ It is a function of the trier of fact to make a determination of the credibility of the alibi witnesses and of the weight to be given the totality of the testimony. (*People v. Brown* (1972), 52 Ill. 2d 94, 105-06.) The weight to be given expert and opinion testimony is to be determined by the trier of fact. (18 Ill. L. & Pr. *Evidence* §332 (1956); 31 Am. Jur. 2d *Expert and Opinion Evidence* §181 (1967); see *People v. Greenfield* (4th Dist. 1975), 30 Ill. App. 3d 1044; *Bay Island Drainage & Levee District No. 1 v. Nussbaum* (1944), 388 Ill. 131.) After a careful review of the evidence we cannot say that the court's findings were unwarranted; nor can we say that the evidence is so palpably contrary to the finding, or so unreasonable, improbable or unsatisfactory as to cause reasonable doubt of the guilt of the accused. We therefore find that the defendant was proven guilty of the offenses beyond a reasonable doubt.

Defendant's next contention is that the court erred in finding Jimmy, the 7-year-old brother of the complaining witness, legally competent to testify. When a child under the age of 14 is called to testify, it is the duty of the trial judge to determine first whether the child is competent as a witness. (*People v. Sims* (1st Dist. 1969), 113 Ill. App. 2d 58, 61.) The standard is whether the child is sufficiently mature to (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate moral duty to tell the truth. (*People v. Broughton* (1st Dist. 1976), 35 Ill. App. 3d 619, 625.) While the trial judge's decision is reviewable, it is only where there has been an abuse of discretion or a manifest misapprehension of some legal principle that the decision will be

reversed. *People v. Ballinger* (1967), 36 Ill. 2d 620, 622; *People v. Breitweiser* (2d Dist. 1976), 38 Ill. App. 3d 1066, 1067, 349 N.E.2d 454, 456.

■■ ■ In response to the court's examination to determine competency here, Jimmy told the court he could spell, was in the second grade, was able to tell the court facts about his kindergarten and first grade classes, told the court where he lived, knew that he was in court because of a case about a man who came to his home and said something to his sister, that he knew the difference between telling the truth and telling a lie, and that he gets into trouble ("grounded") if he tells a lie. On this basis, we conclude that the court did not abuse its discretion in finding Jimmy competent to testify. Any subsequent confusion in his testimony in the cause on trial relates not to his competency but to his credibility. (*People v. Broughton* (1st Dist. 1976), 35 Ill. App. 3d 619, 625; *People v. Brown* (1972), 52 Ill. 2d 94, 105.) The thrust of defendant's allegations in this regard was that because many minor details of Jimmy's direct testimony were impeached upon cross-examination, he was merely parroting what someone had told him to say and had received no lasting impressions of his own. As was held in *Broughton,* once the judge has, as here, determined the child's competence to testify after a valid examination, contradictions or confusion in his later testimony do not affect his competency to testify, only his credibility, as with any other witness. In addition, we note in passing that there is no merit to defendant's claim that Jimmy had not received lasting impressions of the events in question, as there were many less minor matters on which Jimmy remained consistent and which were independently corroborated.

Defendant's next contention concerns the admission into evidence of testimony and records relating to the trapped telephone calls. An important part of the evidence against the defendant at trial was that the family of the complaining witness had been receiving anonymous annoyance calls, and that as a result of a telephone "trap" two of these calls were traced as having originated from Elco Industries where defendant was a security guard. Defendant filed a pretrial motion to suppress this evidence, at first alleging that the trapping of telephone calls was in violation of the eavesdropping laws set forth in article 14 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 14) and 18 U.S.C.A. §2510 *et seq.,* and of defendant's Federal constitutional rights secured under the fourth, fifth, sixth and fourteenth amendments. Unable to advance support of these claims, defense counsel next sought exclusion of such evidence as irrelevant and inadmissible evidence of other crimes. The court, after a jury was impaneled, ruled that because it felt the calls were not closely enough connected to the defendant it was going to exclude evidence of the trapped telephone calls. The State then offered to present witnesses and testimony to the court, outside the presence of the jury and

prior to opening statements, showing the connection between defendant and the phone calls. The court then heard this evidence showing that defendant was the only authorized person in the plant at the time of the 8:15 a.m. Sunday phone call, and, relying on *People v. Wells* (5th Dist. 1967), 80 Ill. App. 2d 187, modified its ruling allowing the State to introduce testimony concerning the hang-up annoyance calls and the telephone trap. At that point defendant then objected that the testimony of the supervisor from the telephone company, rather than the actual technician who installed the system, would be hearsay, conceding that such objection was overruled in *People v. Wells.*

Following opening statements, defendant waived his right to a jury trial. The case was thereupon assigned to a different judge for a bench trial. After being informed of the ruling of the previous judge, the court stated: "I see no reason for changing that ruling on my own motion at this time." The bench trial then commenced. During the testimony of Mr. Hunsberger, central office foreman for the phone company concerning the initiation, operation, and results of the telephone trap, defendant objected to the testimony as hearsay. The court denied defendant's motion to strike the testimony, finding that as the witness had initiated the trap and passed final judgment on the report of the trap, and since there was a showing of records and of accuracy of the automatic equipment, the witness' testimony was admissible. Defendant again objected at the close of the State's case when the State moved for the admission into evidence of its exhibits. Defendant objected to the exhibits concerning the telephone traps as hearsay. The court reiterated its finding that the entire operation was under the supervision and control of Mr. Hunsberger and ruled that the records introduced as exhibits were records kept in the usual course of business, and were thus admitted into evidence.

■■ Our review of the record indicates that this was the final discussion concerning admissibility of the telephone trap evidence. This issue was not presented in defendant's written motion for a new trial. The general rule enunciated by our supreme court is that failure by a defendant to raise an issue in the written motion for a new trial constitutes a waiver of that issue and it cannot be urged as a ground for reversal on review. *(People v. Pickett* (1973), 54 Ill. 2d 280, 282; *People v. Nelson* (1968), 41 Ill. 2d 364.) The last sentence of defendant's post-trial motion, "such other grounds and each and every error as may appear from the Report of Proceedings * * * which is not presently available * * *" is not sufficient to preserve this error for review especially where, as here, this alleged error would have been known to counsel without a transcript. *People v. Rogers* (4th Dist. 1975), 32 Ill. App. 3d 788, 790.

Moreover, the ground for the objection to that evidence relied on by defendant in this appeal was not raised in the trial court. Defendant's

contention on appeal is that section 115—5(a), (c)(2) of the Code of Criminal Procedure (Ill. Rev. Stat. 1973, ch. 38, par. 115—5(a)(c)(2)) specifically excludes this evidence. That statute provides, *inter alia:*

"(a) Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.

\* \* \*

(c) No writing or record made in the regular course of any business shall become admissible as evidence by the application of this Section if:

\* \* \*

(2) Such writing or record has been made by anyone during an investigation of an alleged offense or during any investigation relating to pending or anticipated litigation of any kind."

Our review of the record indicates that this statute was never brought to the attention of the trial court; neither its substance nor its existence was ever raised during the numerous discussions concerning the admissibility of the evidence of the telephone traps. Objections on grounds different from those specifically urged in the trial court will not be considered in the appellate court. (*Town of Cicero v. Industrial Com.* (1950), 404 Ill. 487; *Josel v. Rossi* (1st Dist. 1972), 7 Ill. App. 3d 1091; *Bear v. Holiday Inns of America, Inc.* (2d Dist. 1971), 1 Ill. App. 3d 786.) Where specific grounds of objection have been urged in the court below, new or additional grounds will not be considered on review. (2 Ill. L. & Pr. *Appeal and Error* §258 (1953).) A specific objection to evidence, based solely on a particular point, is a waiver of objections on all other points not specified or relied on. (*Village of Prairie du Rocher v. Schoening-Koenigsmark Milling Co.*, 248 Ill. 57.) A party who seeks to exclude a piece of evidence should be explicit, and disclose to the trial court all defects in the proposed proof which he expects to urge upon this court in the event of an appeal. *Forest Preserve District v. Lehmann Estate, Inc.* (1944), 388 Ill. 416, 429.

We therefore find that we need not decide whether this evidence was inadmissible hearsay under the above statute as this particular ground was not presented to the trial court, nor was the entire issue properly preserved for review. We thus deny defendant's contention that the trial court's ruling on this denied him a fair trial.

Defendant's final contention is that his convictions and sentence for

indecent liberties should be vacated since they were not sufficiently separate, distinct, or independently motivated from the rape. Defendant was indicted by the grand jury on three counts. Count I charged rape, in violation of section 11—1 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—1), for sexual intercourse with a person not his wife. Count II charged defendant with indecent liberties with a child, in violation of section 11—4 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—4), for lewdly fondling or touching the private parts of a child under the age of 16 years. Count III charged indecent liberties with a child, in violation of section 11—4 of the Criminal Code (Ill. Rev. Stat. 1973, ch. 38, par. 11—4), for performing an act of deviate sexual conduct with a child under the age of 16 years. The court found defendant guilty and entered judgments of conviction on all three counts. Subsequently, the court sentenced defendant to 4 to 20 years on Count I (rape) and to 4 to 20 years on Count III (indecent liberties—deviate sexual assault).

■■ Defendant is correct in his contention that the judgment of conviction as to Count II (indecent liberties—lewd fondling) must be vacated, as it was founded on the same act giving rise to the judgment of conviction on the greater offense of rape. Under such circumstances there can be but one conviction of a crime. (*People v. Lilly* (1974), 56 Ill. 2d 493, 495.) This judgment on Count II must be vacated, even though no sentence was imposed on this count, for it may operate to the defendant's prejudice nonetheless; and we have authority under Supreme Court Rule 366 (Ill. Rev. Stat. 1975, ch. 110A, par. 366) to vacate the incomplete judgment. (*People v. Lilly*, at 496.) Therefore, we vacate the judgment of conviction as to Count II of the indictment, indecent liberties—lewd fondling.

■■ However, defendant's contention that we must also vacate the judgment of conviction and sentence imposed on Count III (indecent liberties—deviate sexual assault) on the same basis is without merit. The rape conviction arose out of the act of sexual intercourse performed upon the complaining witness, while the indecent liberties—deviate sexual assault conviction arose out of the act of oral copulation. These two acts have been determined to be two separate and distinct acts for which the imposition of separate convictions and sentences is proper. *People v. Scott* (1974), 57 Ill. 2d 353, 356; *People v. Moore*, (1972), 51 Ill. 2d 79, 88; *People v. Bissonnette* (2d Dist. 1974), 20 Ill. App. 3d 970, 976.

Accordingly, the judgments of convictions and sentences entered upon the charges of rape and indecent liberties—deviate sexual assault are affirmed, and the judgment of conviction entered upon the charge of indecent liberties—lewd fondling is reversed and vacated.

Affirmed in part and reversed and vacated in part.

T. J. MORAN, P. J., and RECHENMACHER, J., concur.