THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
KERWIN JONES, Defendant-Appellant.

Fifth District   No. 79-39

Opinion filed August 1, 1980.

John H. Reid and Gary D. Duncan, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

James E. Dull, State's Attorney, of Mt. Vernon (Martin N. Ashley and Raymond F. Buckley, Jr., both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE KASSERMAN delivered the opinion of the court:

Defendant, Kerwin Jones, appeals from his conviction of attempt murder, armed violence and armed robbery after a bench trial in the Circuit Court of Jefferson County. Defendant was sentenced to three concurrent 15-year terms of imprisonment.

On appeal, defendant contends that (1) the court erred in refusing to allow him to present his alibi defense; (2) he was not proved guilty beyond a reasonable doubt; (3) the record did not reflect a knowing and intelligent waiver of his right to a jury trial; (4) the charge of armed violence was based on the same physical act used to support the charges of armed robbery and attempt murder; and (5) his sentence was excessive.

The evidence adduced at trial disclosed that at approximately 1 a.m. on February 20, 1978, Norman Foster, a cab driver for the Egyptian Cab Co. in Mt. Vernon, was robbed at gunpoint and shot in the hand. Foster testified that he picked up two passengers at 711 Lamar in Mt. Vernon and drove them to 6th and Bell Streets where they alighted from the cab,

stating that they had to go into the house to get money for cab fare. Foster related that while he was waiting for the passengers to return with the fare, the back door on the driver's side opened and he felt a gun pressed against his neck. He testified that his assailant said "[y]ou son of a bitch, you know what this is." According to Foster, he then instinctively reached back to move the gun away from his neck and as he was moving the gun it discharged through his hand. He put the taxi in gear and drove to the police station to report the crime. Foster admitted that he could not identify his assailant since he did not have an opportunity to turn around and look at him. He stated that he did not think that the person who shot him was one of the passengers he drove to the location because his assailant was wearing a long gray overcoat and neither of the passengers were wearing clothing of that description. Foster described one of his passengers as wearing a reddish-orange colored coat and the other as wearing a black cap.

Philip Jones testified that on February 19, 1978, he, Cecil Thomas, and Dwayne Robinson met with defendant around 10 or 11 p.m. The four young men went over to the Currie home on South 12th Street in Mt. Vernon. Philip Jones testified that he stayed at the corner while defendant went into the house. Defendant came back out of the house and all four then proceeded to the home of Cecil Thomas. Philip Jones related that around midnight, defendant began talking about making some money and told him to call a taxicab and have the driver meet him at 711 Lamar and take him to 6th and Bell, which he did. He stated that when he and Dwayne Robinson left to meet the cab, defendant and Cecil Thomas left to go to 6th and Bell. When the cab arrived, Philip Jones and Robinson got in the cab and directed the driver, Norman Foster, to take them to 6th and Bell. Upon arriving at 6th and Bell, Philip Jones recalled that he got out of the cab on the driver's side and saw defendant walking toward the cab. Philip Jones stated that as he approached the corner, he saw defendant leaning over the inside of the cab, then he heard a shot and saw a flash inside the cab. Philip Jones testified that defendant came up to him and handed him a sawed-off shotgun, which he recognized as his own. Philip Jones further stated that he put the shotgun under some bushes near 611 Lamar. According to Philip Jones, later that night defendant told him that he had shot the cab driver because he tried to get away. Officer Andre McWilliams later testified that Philip Jones guided him to some bushes in the area of 707 Conger where a sawed-off shotgun was recovered.

Philip Jones further testified that the four young men returned to the Thomas home and a short time later, at defendant's suggestion, they returned to the area of 6th and Bell to ascertain whether the cab driver was alive. While in the area the group saw the police approaching and dispersed. The police stopped Thomas and questioned him. Philip Jones,

Robinson, and defendant went to Philip Jones's house and remained there the rest of the night.

Cecil Thomas testified that he was with Philip Jones, Dwayne Robinson, and defendant on the night of February 19, 1978. He also testified that the group proceeded to the Currie home on South 12th Street where they met Vernon Jones on the corner by the house. Thomas related that Vernon Jones and defendant went into the house and when defendant returned, he was carrying a shotgun in a paper bag. According to Thomas, while the four young men walked to the Thomas house, defendant began talking about making some money by robbing a cab, and when they arrived at the home of Thomas, a cab was called. Thomas recalled that Philip Jones and Robinson took the cab while he and defendant walked to where the cab was supposed to be "hit." Thomas testified that he remained behind a tree about half a block away from the parked cab. He then related that after Philip Jones and Robinson alighted from the cab, he saw defendant approach the left-hand side of the cab. He stated that defendant was the only person by the cab. Thomas further testified that after the incident he did not rejoin Philip Jones, Robinson and defendant but was walking towards Fostina Ewing's house when stopped by the police. After his encounter with the police, Thomas testified that he went home alone.

Both Philip Jones and Cecil Thomas testified that on the night of February 19, 1978, defendant was wearing a shiny blue eskimo parka with a fur-trimmed hood. Philip Jones testified that Thomas was wearing a black coat with a hood, but Thomas testified that it was a leather type red colored jacket. Brad Flota, the officer who stopped Thomas, also testified that Thomas's coat was cranberry in color. Both Philip Jones and Cecil Thomas testified that Dwayne Robinson had on a tan colored leather coat and Philip Jones testified that Robinson was also wearing a yellow colored coat. Thomas could not recall what Philip Jones had been wearing that evening.

Vernon Jones testified that on the Friday preceding February 19, 1978, he had taken a sawed-off shotgun from Philip Jones after Philip had threatened to shoot defendant. Vernon Jones took the gun over to the Currie residence. He further stated that on the evening of February 19, defendant came over to the Currie house and asked him if he still had the shotgun. Vernon Jones told defendant he still had the gun and gave defendant a paper bag containing the gun. Vernon Jones testified that defendant did not say anything about a robbery.

Defendant testified that he, Vernon Jones, and Isaiah White were at the Jennings house where he and Vernon Jones were staying on the night of February 19, 1978. He stated that Cecil Thomas, Philip Jones, and Dwayne Robinson came over to the Jennings house. Philip Jones

requested defendant to return the shotgun. Defendant testified that he went to the Currie residence, retrieved the shotgun, gave it to Philip Jones and returned to the Jennings house.

Isaiah White was called as an alibi witness on behalf of defendant, and the defense attempted to question Vernon Jones to verify defendant's alibi. The State objected to any testimony in the nature of an alibi being elicited from either witness on the grounds that defendant did not disclose an alibi defense in his original answer to the State's request for discovery on June 22, 1978. Defendant contended that an amended answer to the State's discovery motion was filed September 22, 1978, a month before trial, naming Isaiah White, Vernon Jones, and Jennell Currie as alibi witnesses. Isaiah White had testified that he went over to the Jennings house, where defendant was staying, at approximately 10 p.m. on February 19. He further testified that during the evening Philip Jones, Cecil Thomas, and Dwayne Robinson came to the house and defendant left with them and returned approximately 15 minutes later. White testified that he remained at Jennings' with defendant until 3 or 4 a.m. the next morning, at which time defendant was asleep. The trial court ruled that the testimony of the alibi witnesses was not admissible because defendant had stated in his original answer that he would offer no defense other than not guilty. It ordered all alibi testimony excluded, stating that the defense was attempting to sneak an alibi defense through the "back window."

Defendant contends that he was not proved guilty beyond a reasonable doubt where the evidence implicating him in the crime was provided solely by accomplice testimony. Defendant points to certain discrepancies between the testimony of Philip Jones and Cecil Thomas. Philip Jones testified that he did not see defendant with a gun after leaving the Currie house while Thomas claims that he saw defendant carrying the gun when he left the house. Philip Jones also testified that he, along with defendant, Thomas, and Robinson, returned to Thomas's house after the incident while Thomas testified that he was by himself after the incident and was on his way to a friend's house. Both Philip Jones and Thomas testified that defendant was wearing a blue eskimo coat while the cab driver testified that his assailant was wearing a long gray overcoat.

Defendant denied any involvement in the crime and testified that he spent the night at the Jennings house in the company of Isaiah White. This would have been corroborated by White's testimony had it not been stricken, according to defendant.

■■ The testimony of an accomplice is sufficient to sustain a finding of guilty. (*People v. Hudson* (1970), 46 Ill. 2d 177, 263 N.E.2d 473.) Although there may be some discrepancies in the witnesses' testimony, these

discrepancies go to the question of the credibility of the witnesses. It is the function of the trier of fact, in this case the trial judge, to weigh the testimony, judge the credibility of witnesses and determine factual matters in debatable sets of circumstances; and, in a criminal proceeding, the trier of fact may believe part of a witness' testimony without believing all of it. (*People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528.) Further, a reviewing court has neither the duty nor the privilege to substitute its judgment as to the weight of disputed evidence or credibility of witnesses for that of the trier of fact. (*People v. Wade.*) In our opinion, based on the evidence admitted at trial, defendant's guilt was established beyond a reasonable doubt.

Defendant contends, however, that the case must be reversed and remanded on the basis that the trial judge erred in excluding the testimony of defendant's alibi witnesses. Conversely, the State urges that there was no error in this respect due to defendant's failure to comply with Supreme Court Rule 413.

Supreme Court Rule 413(d)(iii) (Ill. Rev. Stat. 1977, ch. 110A, par. 413(d)(iii)), which controls the instant case, provides:

"(d) Defenses. Subject to constitutional limitations and within a reasonable time after the filing of a written motion by the State, defense counsel shall inform the State of any defenses which he intends to make at a hearing or trial and shall furnish the State with the following material and information within his possession or control:

* * *

(iii) and if the defendant intends to prove an alibi, specific information as to the place where he maintains he was at the time of the alleged offense."

The record establishes that defendant originally filed answers to the State's motion for discovery and on September 22, 1978, more than 30 days prior to trial, filed an amended answer to the State's motion for discovery, stating:

"Now comes the defendant by and through his attorney and for his amended answer to the State's motion for discovery states that the defense may call as witnesses Vernon Jones, Mt. Vernon, Illinois and Isaiah White, 911 Cleveland, Mt. Vernon, Illinois, as well as Jeanell Curry. Said witnesses are in addition to those witnesses the defense previously indicated it may call and they may be called as alibi witnesses on behalf of the defendant, who was at the home of Vernon Jones at the time the crime occurred."

This answer provided the information required by Supreme Court Rule 413(d)(iii); however, it was designated as being in compliance with Supreme Court Rule 415(b) (Ill. Rev. Stat. 1977, ch. 110A, par. 415(b)),

which provides that discovery shall be of a continuing nature. Had defendant designated the amended discovery answer an amended disclosure to the prosecution under Supreme Court Rule 413(d)(iii), the State could have complained of no error and there would have been no basis for the trial court's ruling excluding alibi testimony. Moreover, the amended answer was filed September 22, 1978, and the trial did not commence until October 25, 1978; therefore, the State cannot allege surprise.

■■ We conclude that the trial court's exclusion of the testimony of defendant's alibi witnesses was not appropriate as a remedy for defendant's labeling the pleading "Amended Response to State's Motion for Discovery" instead of "Notice of Alibi Defense." Under these circumstances, the sanction was not warranted and prejudiced defendant in the presentation of his defense. As stated by the court in *People v. Jackson* (1977), 48 Ill. App. 3d 769, 772, 363 N.E.2d 392, 394, the sanction chosen by the trial judge "was too severe and produced a degree of unfairness that constitutes reversible error." This is particularly obvious where, as in the instant case, there was no evidence of defendant's guilt other than the testimony of his two alleged accomplices. Therefore, we conclude that the trial court erred in excluding the testimony in question and that this cause must be reversed and remanded for a new trial.

In view of our disposition of this issue, it is unnecessary to address the other issues raised by defendant in this appeal.

For the foregoing reasons, the judgment of the Circuit Court of Jefferson County is reversed, and this cause is remanded for a new trial.

Reversed and remanded.

HARRISON and SPOMER, JJ., concur.