THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
SERGIO SANCHEZ, Defendant-Appellant.

First District (5th Division)    No. 80-3106

Opinion filed March 26, 1982.—Rehearing denied April 30, 1982.

Di Natale & Montemurro, of Chicago (Anthony M. Montemurro, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Kevin Sweeney, and Richard J. Cosentino, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MEJDA delivered the opinion of the court:

Defendant was charged by indictment with the murder of Justina Rivera in violation of sections 9—1(a)(1) and 9—1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, pars. 9—1(a)(1) and 9—1(a)(2)), and with armed violence in violation of section 33A—2 (Ill. Rev. Stat. 1979, ch. 38, par. 33A—2). Following a bench trial, defendant was found guilty of murder and was sentenced to serve 20 years in the Illinois Department of Corrections. On appeal, he contends that: (1) the court improperly admitted hearsay evidence; (2) the testimony of an eight-year-old witness was neither competent nor credible; and (3) he was not proved guilty beyond a reasonable doubt.

Johnny Ramos testified that on June 5, 1980, he resided with his wife Marta in a first floor apartment at 2659 West Cortez, Chicago, Illinois. At about 4:30 a.m. on that date he was awakened by the sound of gunshots followed by screaming. Less than one minute later he heard a knocking on his door accompanied by the victim screaming, "Call the police, help me, Marta." He then telephoned the police, returned to the door, opened it, and saw the victim collapse on the floor. Noticing that she had been shot, he asked the victim, "What happened?" to which Justina Rivera replied, "My sister's husband shot me." At the time the victim spoke, she was covered with blood and was nervous and shaking a lot, mumbling and scared, and her words "came out in a terrified way." Within two to three minutes after the witness heard the gunshots, the police arrived at the scene. On cross-examination the witness testified that the victim's face was covered with dirt and blood.

Marta Ramos testified that on June 5, 1980, she was sleeping with her husband and was awakened at about 4:30 a.m. by the sound of gunshots. A minute or two later she heard some pounding at the door. Her husband opened the door and she saw the victim covered with blood, standing and then falling down. The victim appeared to be in pain. She testified that the police arrived a couple of minutes after the gunshots and that a police officer asked the victim, "Who did this to you?" to which the victim replied, "Sergio."

Investigator Bruce Peck testified that at about 5:15 that morning he conducted an interview with the victim at the hospital emergency room. The victim was lying on a table, groaning, shaking and shivering. Her breathing appeared to be forced and she seemed to be in great pain. The investigator spoke through a medical student interpreter. He asked the victim who shot her and she replied "Sergio." He then asked who this person was and she replied that he was her sister Iris' boyfriend. She also said she was shot because Sergio believed that she was coming between him and Iris. On cross-examination Investigator Peck repeated that the

victim was speaking Spanish, which he did not understand, and that he did not know what, if any, medication had been administered to her.

Investigator Michael Shull testified. He had conducted a search of defendant's apartment on the morning of June 5, 1980, and found it unoccupied. Later that afternoon he located and questioned defendant. Defendant related that on June 5, 1980, he was home asleep until approximately noon. When told that his apartment had been searched at 8:30, and then shown a photograph of the victim, defendant called the victim a whore, then pounded his fist on the photo, crumpled it up and threw it on the floor. On cross-examination Investigator Shull stated that defendant later told the police that he was at his former wife's home that morning.

Carlos Gonzales, the eight-year-old son of the victim was the only eyewitness to the offense. He testified that on the night that his mother was shot he was awakened by the sound of defendant's footsteps going towards his mother's room. He had seen the defendant on three prior occasions. He stated that he first saw defendant on the night in question in his apartment at the back door, near his bedroom, and that defendant had looked into his bedroom. The boy testified that he heard defendant say "I got to do this" as he walked to his mother's bedroom. He then explained that he tiptoed to the kitchen where he could see defendant pull a gun from his pants and load it. The witness watched the defendant lift the gun with both hands and shoot in his mother's direction. The boy further identified defendant, in court, as the man who shot his mother and explained that he had identified defendant in a lineup on the day after the shooting.

On cross-examination the boy testified that he had gone to sleep at about midnight and had turned the light out. Then he stated that the light in his bedroom was on when he went to sleep. He further stated that he did not get out of the bed until after he heard the shots. He then related that when he got out of bed he saw defendant put bullets in the gun and cock it. He later remembered that when the shots were fired he was on the back porch and although he could not see into his mother's bedroom he saw defendant pointing the gun into her room and shooting in her direction. The boy explained how defendant then dragged his mother by her feet and then placed her on a couch. He watched as defendant sat down and argued with his mother about something in Spanish. The boy said he then saw his mother try to open the front door, and that defendant ran out the door first and then down the stairs. He saw his mother go down the stairs and fall on the floor. He also described how defendant had put some dirt around his mother's mouth with his hand. He admitted that certain police investigators had told him, prior to his viewing a lineup, that in such lineup would be the man who shot his mother.

Investigator James Padar testified that he examined the crime scene and found a large amount of blood on the stairway outside the door to the second floor apartment and trailing to the third floor apartment. He also found two bullet holes in the wall of the victim's front bedroom.

Officer Jose Martinez testified that he acted as interpreter for Investigators Shull and Padar when they questioned the defendant, and Herberto Torres testified that he was the medical student who interpreted the victim's conversation at the hospital.

Defendant, his wife and their four children testified that at the time of the shooting, defendant was at their house, asleep in his wife's bedroom. On cross-examination defendant stated that he had lived with Iris Ramos for three or four years, that together they had one child, and that they stopped living together three or four months before June 1980.

The parties stipulated that if Dr. Yuksel Konakci, an expert in forensic pathology, was called to testify he would state that Justina Rivera died on June 5, 1980, as the result of a bullet wound to her chest, the bullet passing through her right lung and exiting her right back.

OPINION

Defendant contends that accusatory statements made by Justina Rivera after she was mortally wounded were inadmissible as hearsay evidence and did not qualify under the spontaneous declaration exception to the rule against hearsay. Defendant argues that the interval of time between the shooting and the utterances destroyed their spontaneity. *People v. Jackson* (1956), 9 Ill. 2d 484, 138 N.E.2d 528; *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25.

The three criteria for a hearsay statement to be admitted as a spontaneous declaration are: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Poland* (1961), 22 Ill. 2d 175, 181, 174 N.E.2d 804, 807; *People v. Vinson* (1977), 49 Ill. App. 3d 602, 364 N.E.2d 364.) It is well established that asking the declarant "what happened" is insufficient to destroy the spontaneity of a response. (*People v. Damen; People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61.) Similarly, we deem that asking the declarant "Who did this to you?" is insufficient to destroy the spontaneity of a response. Applying the above criteria to the first two statements, we find that all three elements are present and that these declarations were properly admitted into evidence.

As to the third statement, made in the emergency room 45 minutes after the shooting, both the first and third criteria were met, and the only disputed question is whether the victim had time to fabricate. However, time alone does not control the admissibility of the utterance, but rather

the critical factor is the lack of opportunity to fabricate. *People v. Parisie* (1972), 5 Ill. App. 3d 1009, 287 N.E.2d 310.

■■ The trial court was justified in concluding that the statements herein were not the product of fabrication. The testimony that the victim was "shivering" and "shaking" and was "groaning" and in "great pain" was sufficient to establish that the victim did not engage in reflective thought. (See *In re Hatfield* (1979), 72 Ill. App. 3d 249, 390 N.E.2d 453; *People v. Robinson* (1977), 47 Ill. App. 3d 48, 361 N.E.2d 759.) In our view Justina Rivera's statement to Investigator Peck was a spontaneous reaction to her shooting. Moreover, even if the victim's emergency room statement did not meet all three criteria, its admission was harmless beyond a reasonable doubt since it was merely cumulative. See *Vinson; Parisie.*

Defendant next contends that eight-year-old Carlos Gonzales was not competent to testify. The competency of a minor to testify is determined by the degree of intelligence rather than his age. (*People v. Brown* (1972), 52 Ill. 2d 94, 285 N.E.2d 1; *In re Cruz* (1979), 76 Ill. App. 3d 565, 395 N.E.2d 388.) In determining the minor's intelligence, the judge should consider whether the minor is sufficiently mature to: (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate the moral duty to tell the truth. (*People v. Ballinger* (1967), 36 Ill. 2d 620, 225 N.E.2d 10; *In re Cruz.*) The competency of such a witness is to be determined by the trial judge, and his decision will not be reversed on appeal unless there has been an abuse of discretion or a manifest misapprehension of some legal principle. *Ballinger; In re Cruz.*

In the instant case the trial judge and the prosecuting attorney both conducted *voir dire* examinations of Carlos Gonzales to determine his competency. During the prosecutor's examination the witness told the court that he was a third grader at Nixon School. He testified that he studied math, reading, writing and spelling, and that sometimes his grades were good and sometimes bad. He supplied the names and ages of his brother and sister. He testified that he believed in God, and that he knew what a lie was, and that God, his parents, and the judge would all punish him if he lied. He said that he would promise the judge that he would tell the truth. He also recited his birthday and knew the day of the week on which he was testifying.

In the examination conducted by the judge the boy told the court that he did not go to church. The judge asked the boy to read aloud a series of words printed on a calendar. The witness was able to recite each word but one, apparently not being able to pronounce a man's last name. He was asked to count the number of months in a year, and stated that he did not know the answer. He told the court that by placing his hand on the red

book he was to tell the truth, and that if he didn't he would go to jail, and that God would also punish him.

■■ Applying the above standards to this case, we do not believe that the judge's determination should be reversed. The witness experienced some difficulty in answering questions during the trial, specifically relating to his precise location when the shooting occurred. However, once the judge has determined that the minor is competent to testify, any confusion or contradiction in later testimony only goes to his credibility as a witness, not his competency to testify. (*In re Cruz*; *People v. Goble* (1976), 41 Ill. App. 3d 491, 354 N.E.2d 108.) Accordingly, defendant's argument on this point is without merit. Further, we reject defendant's argument that the witness' cross-examination testimony that the prosecutor had spoken to him prior to the hearing regarding the type of questions the judge would ask about telling the truth indicates that the boy did not appreciate the moral duty to tell the truth. On the contrary, his answers indicate an intention to be honest and do not show the witness was incompetent to testify. Moreover, the trial judge was able to observe the demeanor of the witness, and in our opinion he did not abuse his discretion in permitting the boy to testify.

Defendant's next contention is that the testimony of Carlos Gonzales was not credible. Defendant emphasizes the fact that the witness gave contradictory testimony regarding his location when the gunshots were fired which, defendant argues, completely erodes his credibility as a witness and further demonstrates that a reasonable doubt exists regarding the defendant's guilt.

■■ It is the function of the trier of fact to weigh the testimony, judge the credibility of the witnesses and determine factual matters in debatable circumstances, and in criminal proceedings, the trier of fact may believe part of a witness' testimony without believing all of it. (*People v. Jones* (1980), 86 Ill. App. 3d 1013, 408 N.E.2d 764.) A reviewing court has neither the duty nor the privilege to substitute its judgment as to the weight of disputed evidence or credibility of witnesses for that of the trier of fact. (*Jones*; *People v. Wade* (1977), 51 Ill. App. 3d 721, 366 N.E.2d 528.) We have reviewed the witness' testimony and find no basis to reverse the judge who saw and heard the witness. While there are a few minor contradictions as to his precise location at the moment of the shooting, there are many significant details which remained consistent in the witness' testimony which, in our view, demonstrate that the boy received lasting impressions of the events in question, many of which were corroborated by independent testimony. See *People v. Goble* (1976), 41 Ill. App. 3d 491, 354 N.E.2d 108.

Finally, defendant argues that he was not proved guilty beyond a

reasonable doubt in light of the evidence presented and that his alibi testimony, corroborated by five members of his family, was not overcome by sufficient credible evidence.

It is settled that a single positive and credible witness who had an ample opportunity to observe the accused is sufficient to support a conviction even though such testimony is contradicted by the alibi testimony of the accused and alibi witnesses. The fact that defendant denies his guilt, and that defense witnesses corroborate his alibi, does not, in and of itself, create a reasonable doubt of defendant's guilt. (*Wade.*) The trier of fact must determine the weight and credibility of the witnesses, and unless that determination is so unreasonable, improbable, or unsatisfactory as to raise a reasonable doubt of defendant's guilt, the verdict will not be disturbed on appeal. *People v. Donald* (1963), 29 Ill. 2d 283, 194 N.E.2d 227; *People v. Owens* (1977), 46 Ill. App. 3d 978, 361 N.E.2d 644.

■■ The court here obviously believed the eyewitness testimony of Carlos Gonzales that defendant entered his apartment on the night of the occurrence and fired a handgun into his mother's room. We believe the court was entirely justified in doing so since the boy had seen defendant on three prior occasions, and apparently had ample opportunity to view him during the events before and after the shooting. After examining all the evidence of this case in light of the above principles of law, we do not believe that the evidence was of such nature as to render the testimony of Carlos Gonzales so unreasonable, improbable or unsatisfactory as to raise a reasonable doubt of defendant's guilt.

For the foregoing reasons, the judgment of the circuit court is affirmed.

Affirmed.

LORENZ and WILSON, JJ., concur.