THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DENNIS GROVER, Defendant-Appellant.

Second District  No. 82—43

Opinion filed July 5, 1983.

G. Joseph Weller and Kathleen J. Hamill, both of State Appellate Defender's Office, of Elgin, for appellant.

Fred L. Foreman, State's Attorney, of Waukegan (Phyllis J. Perko and Sally A. Swiss, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HOPF delivered the opinion of the court:

Defendant, Dennis Grover, was found guilty after a jury trial of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1) in the circuit court of Lake County and was sentenced to 15 years' imprisonment, to run concurrently with a previously imposed sentence for theft. He appeals, challenging the admission of an alleged spontaneous utterance by the victim, a ruling allowing the jury to be informed of the victim's whereabouts, the sufficiency of the evidence and the prosecutor's closing argument.

On September 1, 1981, the date of the instant offense, Renee Springs, the victim, was 15 years old. She had been diagnosed as having a behavorial disorder, but was not retarded. At approximately 7 p.m. on that date, Peggy Loving Connors (hereinafter referred to as Mrs. Loving) overheard a young man and a girl arguing outside her kitchen window. She heard a female voice saying, "Leave me alone. I want to go home," and observed the man striking the girl. The girl was crying. The man, later identified as defendant, had the girl pinned down on the steps and was telling her to shut up. Loving turned away from the window but continued to hear slapping noises and the sound of crying. Loving again looked out the window and observed defendant on top of the girl. She testified to certain facts explicitly evidencing an act of sexual intercourse. The girl was crying and saying she wanted to go home. Mrs. Loving then opened her front door and looked at defendant. Defendant got up, and the girl began to run to a nearby field. Defendant ran after her. Mrs. Loving identified the girl as Renee Springs, and stated she (Renee) was hysterical at that time.

Officers Luis Marquez and Steven Harvey were dispatched to the scene and came upon defendant in a field near Loving's house. Defendant was holding Renee Springs by the arms. Defendant released the girl and began to walk away. Officer Marquez several times ordered defendant to stop, and then finally stopped him. Defendant, who identified himself as Jessie Allen, was eventually placed under arrest. The girl was crying and she did not want to talk to anybody. Officer Harvey attempted a conversation with her when an elderly woman, Celestine Wright, came up and helped calm Renee down.

Mrs. Celestine Wright was Renee's Sunday School teacher. She testified she was driving by the scene when she observed Renee standing by a police officer hysterical and crying. Mrs. Wright went over to her and heard her repeatedly saying, "He messed with me. He messed with me."

Renee was taken to a hospital, where an examination revealed an

abrasion on her knee and a crusted fluid outside her vagina. Laboratory analysis of Renee's blouse and of defendant's underwear revealed the presence of semen and spermatozoa. Vaginal, rectal and oral swabs taken from Renee failed to indicate the presence of seminal material.

Defendant was interviewed concerning the pending rape charge by Officer Howard Pratt. After being advised of his *Miranda* rights, defendant stated that on September 1 he had met a black female while walking down the sidewalk, and that they eventually had intercourse beneath the bushes alongside a two-story building. Defendant denied struggling with the victim or using any force. He stated that after intercourse was completed the girl began to act in a manner which he variously described as "strange," "funny" or "goofy," and said that she asked to be taken to North Chicago.

The victim in the instant case did not testify. Upon the conclusion of the State's case and the denial of a motion for directed verdict, the defense rested without presenting evidence.

■■ ■ Defendant first contends that the trial court erred in admitting as spontaneous declarations certain statements made by Renee Springs to Mrs. Wright. Defendant claims reversible error occurred because the State failed to prove that the statement was not made in response to questioning by the police, and because it was not demonstrated that the declarant was unavailable to testify at trial. See *People v. Taylor* (1971), 48 Ill. 2d 91, 268 N.E.2d 865; *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531.

A statement relating to a startling event or condition, made while the declarant was under the stress of excitement caused by the event or condition, is admissible as an exception to the hearsay rule. (E. Cleary & M. Graham, Handbook of Illinois Evidence sec. 803.3, at 426 (3d ed. 1979).) In order to be admissible under this exception, there must have been: (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) a statement relating to the circumstances of the occurrence. (*People v. Chatman* (1982), 110 Ill. App. 3d 19, 26, 441 N.E.2d 1292, quoting *People v. Poland* (1961), 22 Ill. 2d 175, 174 N.E.2d 804.) In resolving the question of whether it is reasonable to believe that the declarant acted without thought, or whether there existed the possibility that declarant had deliberated in making a false statement, the court is required to consider all of the circumstances surrounding the making of the statement, including the time which elapsed between the occurrence and the declaration, and the distance which the declarant traveled from the scene of the occurrence before speaking.

(*People v. Weinger* (1981), 101 Ill. App. 3d 857, 873, 428 N.E.2d 924.) Whether a statement was sufficiently spontaneous to qualify for admission in evidence under this exception to the hearsay rule is a preliminary question for determination by the trial court. (*People v. Lang* (1982), 106 Ill. App. 3d 808, 810, 436 N.E.2d 260; *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 1053-54, 411 N.E.2d 61, 66.) The court's ruling will be held an abuse of discretion only if the statements are not so intimately connected with the event as to indicate a lack of premeditation. (*People v. Lang; People v. Cherry.*) The fact that the statement has been made in response to a question will not itself deprive an utterance of the requisite spontaneity to establish its admissibility. Thus, statements made in response to general inquiries as to what has occurred may nevertheless be spontaneous (*People v. Miller* (1978), 58 Ill. App. 3d 156, 373 N.E.2d 1077; *People v. Damen* (1963), 28 Ill. 2d 464, 193 N.E.2d 25), as may statements made in response to more detailed inquiries which probe for the existence of specific criminal activity (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 434 N.E.2d 395 (statement by mortally wounded victim made in response to the question, "Who did this to you?")).

■■ In the present case, Mrs. Wright testified that when she went over to Renee, Renee was hysterical and crying. Mrs. Wright asked her what was wrong, and Renee kept saying, "He messed with me. He messed with me." Mrs. Wright then hugged Renee, attempting to calm her, during which time Renee continued to repeat this phrase. Mrs. Wright testified in chambers that she believed an officer had attempted to interview Renee before she arrived. However, the testimony of Officer Harvey makes it evident that such attempts were fruitless. The officer stated that when he approached Renee she was hysterical and crying, and although he attempted to talk with her about the incident she did not wish to talk with anyone and was only interested in finding her purse. Thereafter, Mrs. Wright arrived on the scene. In view of this substantial evidence of Renee's hysterical condition at the time of her statements, which were made only minutes after the act occurred and at a place only a short distance from the scene of the crime, the trial court was within its discretion in finding that she lacked an opportunity under the circumstances to fabricate, and that her statement was not the product of reflective thought. (See *People v. Sanchez* (1982), 105 Ill. App. 3d 488, 434 N.E.2d 395.) Accordingly, the trial court properly determined that the necessary foundation had been laid to establish Renee's extrajudicial statement as a spontaneous utterance.

In this regard, defendant's reliance upon *People v. Taylor* (1971),

48 Ill. 2d 91, 268 N.E.2d 865, is misplaced. *Taylor* involved a declarant who, while appearing nervous, made no comment or complaint to available witnesses until after one of them had twice inquired as to whether he could help her. Under those circumstances, where the framing of questions prompted the voicing of the complaint and where there was nothing that could be deemed an uncontrolled and spontaneous utterance of outraged feelings, the declaration could not be considered a spontaneous utterance. In the present case, the trial court could have concluded that Renee had no reasonable opportunity to voice a prior complaint to Mrs. Loving at the time the latter appeared in the door, given indications that Renee was engaged at that time in trying to free herself from defendant's restraint. Moreover, Renee's hysterical condition at the time of the statements was well-established, unlike the declarant in the *Taylor* case.

▮▮ ▮ Relying upon *Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, defendant further contends that the sixth amendment precludes admission of hearsay evidence against a defendant unless it is shown both that the statement bears adequate "indicia of reliability," and that the declarant is unavailable for cross-examination. He argues that neither was demonstrated here. We disagree.

The reliability of the statement was established by virtue of the fact that it qualified as an excited utterance. Such statements have special reliability because of the lack of time to reflect and fabricate. (*People v. Pointer* (1981), 93 Ill. App. 3d 1064, 1068, 418 N.E.2d 1; *People v. Cherry* (1980), 88 Ill. App. 3d 1048, 411 N.E.2d 61.) Further, the unavailability of Miss Springs was established by a stipulation entered by the parties that she was in the hospital at the time of trial. Although defendant claims that his trial counsel was "forced" to enter into this stipulation for tactical reasons, there is nothing in the record to indicate that the substance of the stipulation was inaccurate or fraudulent. We also note that defense counsel at trial did not request further inquiry into Miss Springs' medical condition. We, therefore, conclude that Miss Springs' unavailability was adequately established. We also conclude that the statements, "He messed with me. He messed with me" were statements indicating Renee's excited mental condition shortly after the rape, and the reliability of such statements comes not from the reliability of the declarant but from the circumstances under which the statements were made. (*People v. Pointer; cf. Ohio v. Roberts* (1980), 448 U.S. 56, 65 L. Ed. 2d 597, 100 S. Ct. 2531, where the reliability of former testimony depends upon the reliability of the declarant.) Under these circumstances, we find

no error in the trial court's admission of the statements.

■ Defendant next contends that the trial court erred in permitting the State to explain to the jury that Renee Springs was unable to testify because she was hospitalized. Defendant asserts that this explanation substantially prejudiced the accused and carried with it "the unavoidable implication that the defendant's conduct had necessitated the complainant's hospitalization." Defendant claims that this evidence was irrelevant and analogizes this case to others in which error was found in permitting proof that a crime victim required medical treatment. (*People v. Johnson* (1979), 76 Ill. App. 3d 147, 394 N.E.2d 919; *People v. Nickolopoulos* (1962), 25 Ill. 2d 451, 185 N.E.2d 209.) Defendant's analogy fails, however, for there was no attempt in the instant case to link the victim's hospitalization with the impact of the crime. Defendant concedes that the explanation of Renee's whereabouts was admitted solely to rebut the adverse inference to the prosecution which would arise from its failure to call an obvious State witness who could testify to material facts. (See *People v. Deskin* (1978), 60 Ill. App. 3d 476, 376 N.E.2d 1086.) Evidence concerning Renee's whereabouts was relevant to the question of whether such an adverse inference should arise. (*People v. Pagan* (1972), 52 Ill. 2d 525, 537, 288 N.E.2d 102; *People v. Johnson* (1970), 45 Ill. 2d 38, 46, 257 N.E.2d 3.) Thus, the evidence was relevant to a potential issue in the case. It was not presented in any manner likely to inflame the passions of the jurors or prejudice the defendant, and in fact the wording of the stipulation was at the request of defense counsel. Accordingly, it was properly received in evidence.

■ Defendant next contends that the evidence was insufficient to establish his guilt of rape beyond a reasonable doubt. Defendant does not deny having sexual intercourse with Renee Springs, but contends that there was insufficient evidence adduced at trial to establish that the act was accomplished by force and against her will.

Reviewing courts have a special duty of carefully examining the evidence in rape cases (*People v. Lucien* (1982), 109 Ill. App. 3d 412, 440 N.E.2d 899; *People v. Utinans* (1977), 55 Ill. App. 3d 306, 314, 370 N.E.2d 1080), but this duty does not permit the court simply to substitute another view of the evidence for that found credible by the finder of fact. (*People v. Lucien.*) The existence of conflicting evidence will not justify a reversal of the trial court, but only evidence that is so palpably contrary to its findings or so unreasonable, improbable or unsatisfactory as to cause a reasonable doubt of guilt will warrant a reversal of the accused's conviction. *People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.

Defendant notes that Renee Springs did not testify in this case and contends that the circumstantial evidence upon which the State was therefore required to rely was insufficient to prove her lack of consent. We disagree. From the evidence before them, the jurors could reasonably have concluded that Renee Springs was being struck and physically restrained against her will prior to the act of intercourse; that after completion of the act she fled hysterically from defendant's presence at her first opportunity; that defendant pursued her and again restrained her; and that upon the arrival of third persons she remained in a hysterical condition, complaining that defendant had "messed with" her. The jurors could also have considered defendant's conduct toward Officer Marquez as evincing a design to evade apprehension or identification. Moreover, they could have found the credibility of defendant's exculpatory statement impeached by Mrs. Loving's observations of Renee Springs after the completion of intercourse. Those observations were inconsistent with defendant's claim that Renee had asked to be taken to North Chicago. Finally, the jury could have considered that Renee's torn panty hose and cut knee were indicative that she had been subjected to forcible conduct. For these reasons, we conclude that defendant was proved guilty of rape beyond a reasonable doubt.

■ Defendant's final contention on appeal is that he was denied a fair trial by statements of the prosecutor during final argument expressing his personal opinion and inviting the jury to make improper use of the evidence. The remarks in question were made during the prosecutor's rebuttal argument and read as follows:

"Mr. Hughes is asking you to step into the light of Mr. Grover over and over again and say, 'What, why didn't he do that?' I'll tell you why. He's a rapist and he's stupid. You can't put your minds into the mind of a rapist. You can't think like Dennis Grover thinks. That's impossible.

* * *

And last but not least, of course, Dennis Grover is stupid. He raped a person on the front porch of somebody. That is stupid. We can't expect you people to understand how this man thinks. That's impossible."

We note that no contemporaneous objection was lodged against the first of the above-quoted remarks, and neither of the alleged improprieties was raised in defendant's post-trial motion. Accordingly, defendant has failed to preserve this issue for review. *People v. Jackson* (1981), 84 Ill. 2d 350, 418 N.E.2d 739; *People v. Tannenbaum* (1980), 82 Ill. 2d 177, 415 N.E.2d 1027.

Even were we to reach this issue on the merits, we would find no error. An argument based upon evidence in the case which characterizes the accused in terms of the charges or the evidence in the proceedings then pending against him is not error. (*People v. Slaughter* (1980), 87 Ill. App. 3d 1066, 409 N.E.2d 508; *People v. Jedlicka* (1980), 84 Ill. App. 3d 483, 405 N.E.2d 844.) Here, there was considerable support in the evidence for the prosecutor's characterization of defendant as a rapist. It does not appear from a reading of the argument as a whole that this term was employed in an effort to relieve the State of its burden of proof. Moreover, the prosecutor's suggestion that the jury analyze the circumstances of the case in light of the fact that defendant was a rapist appears to have been an effort to persuade the jury that various aspects of defendant's conduct at the time in question may have been influenced by the excitement, confusion or other circumstances incident to his involvement in a violent crime. Thus, it was not error for the prosecutor to argue that circumstances asserted by the defense to require a conclusion of defendant's innocence could be viewed as consistent with a conclusion of his guilt.

Defendant's reliance upon *People v. Fort* (1958), 14 Ill. 2d 491, 153 N.E.2d 26, is misplaced, for there the prosecutor's statement that defendant had previously been, was then and always would be a rapist implied that defendant had perpetrated other rape offenses other than that for which he was then on trial. The infirmity identified in *Fort* was not present in the instant case.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P.J., and NASH, J., concur.