THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RAYMOND J. McNICHOLS, Defendant-Appellant.

Fifth District No. 5—84—0332

Opinion filed January 9, 1986.

Randy E. Blue and Rita K. Peterson, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Philip Frazier, State's Attorney, of Metropolis (Kenneth R. Boyle, Stephen E. Norris, and Susan M. Young, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HARRISON delivered the opinion of the court:

Defendant, Raymond J. McNichols, was convicted, following a bench trial in the circuit court of Massac County, of aggravated indecent liberties with a child and sexual abuse of a child by a family member. He was sentenced to six years' imprisonment for aggravated indecent liberties with a child and two years for sexual abuse of a child by a family member, with the terms to run concurrently.

On appeal, defendant claims (1) the court abused its discretion in finding the child complainant competent to testify, (2) he was not proved guilty beyond a reasonable doubt, (3) the court erred in admitting hearsay testimony of the child's mother and a social worker, and (4) the court erred in admitting evidence of defendant's prior misconduct. We affirm.

Defendant's wife, Carolyn McNichols, testified that she married defendant in 1975. They had a son, who was born in 1978. On April

18, 1983, defendant, Mrs. McNichols, and their son ate dinner around 7 p.m. Defendant ate his meal in the nude. Mrs. McNichols testified that after dinner, defendant asked the boy, then four years old, to go with him to the boy's room to wrestle and play games. Later, Mrs. McNichols, who was in the kitchen, heard the boy scream, "Oh, you hurt my pee pee." She ran to the child's bedroom, where she saw defendant, still nude, sitting on the floor. The boy was also nude. She asked what had happened, and the child told her defendant "twisted on my pee pee." Defendant told her they were wrestling and that his knee might have bumped the boy's penis. Mrs. McNichols took the boy into another room to dress him. She again asked him what happened and the boy, demonstrating with his own hand on his own penis, told her defendant "twisted it like this and he twisted it up and down like that." For this incident, defendant was charged with sexual abuse of a child by a family member.

Mrs. McNichols further testified that on the night of April 22, 1983, defendant and the child went to bed together in the child's bed. Mrs. McNichols was awakened that night by the sound of something hitting a wall. She stated the child was kicking the wall of his bedroom, with the noise sounding as if he was "trying to climb or get away." She then heard what she called a "blood curdling" scream from her son. She ran to his room, turned on the light and saw defendant jumping out of the bed. He was nude and had an erection. The child was not wearing his pajamas and was screaming and crying. Defendant told his wife he thought the boy was having a nightmare. As Mrs. McNichols tried to quiet her son, she noticed blood on his buttocks. He told her it was sore and it hurt.

Mrs. McNichols ordered defendant to leave the house, but he refused. She then told him she would leave with the child, but defendant said she would not because he did not intend "to get caught again." Defendant left the bedroom and returned with a pistol. Mrs. McNichols testified she told him again to leave but he again refused and for a second time he commented about not getting "caught again." She testified defendant told her if she were to leave, she would see how long she stood up if she tried to walk through the door. He also told her not to call the police if she knew what was good for her.

Mrs. McNichols held her son most of the night and finally put him to bed around 5 a.m. He woke up around 9 a.m., and when he tried to sit down to watch television, he started crying and said he could not sit down. Mrs. McNichols testified the boy told her his buttocks were sore, and that the night before, defendant had taken him into the

bathroom and told him he had to check him for worms. She stated the boy told her he laid on his back on the floor, and defendant put his finger into the child's anus. After hearing the boy's report of what had happened, Mrs. McNichols examined his anus and found it to be red, irritated with broken skin, and it had the appearance of having bled. This evidence was related to the charge of aggravated indecent liberties with a child.

The victim child testified after the court examined him in chambers and determined him competent to do so. He testified he and defendant often slept together in the child's bedroom. He stated one time defendant did not have any clothes on, and that defendant took off his, the boy's clothes, then defendant "hurt my pee pee" by twisting it, and that defendant would twirl him around "so that my face would hit his pee pee." He stated that when defendant twisted his penis, he screamed "bloody murder" and his mother came into the room. He told her what had happened. He also stated that one day defendant put his finger into his anus and that defendant told him he was checking for worms. The boy testified he also told his mother about this incident.

A social worker, Nina Russell, testified that she visited the victim's home on May 2, 1983, and she testified as to what the boy told her during that visit. She stated the boy told her defendant swung him back and forth between his legs so that their penises touched. She testified the child told her about times when defendant checked his anus for worms and that one time defendant had told him he had a blade of grass in his anus and needed some help getting it out.

Also testifying for the State was the 22-year-old natural son of Mrs. McNichols, who testified that when he was 11 or 12 years old defendant had fondled his penis and put the boy's penis in his mouth. He also testified defendant had tried to put his penis in the boy's rectum but was unsuccessful.

Defendant, who was 57 years old at the time of these incidents, took the stand in his own defense. He denied committing the offenses charged. He admitted he frequently wrestled with his son, laid with him to help him go to sleep, and gave him baths, but testified that his contact with his son's penis and rectum was limited to washing and drying with a towel. Defendant testified the child had bowel problems which would tear the tissue in his rectum and that there were times his son's buttocks would be red from a rash. Three witnesses, who were the adult children of defendant, each testified defendant had never engaged in any inappropriate conduct of a sexual nature with them.

■ Defendant first contends the court abused its discretion in finding the child victim, defendant's son, competent to testify. He claims the boy had no independent recollection of the alleged offenses. The competency of a minor to testify is determined by the degree of intelligence rather than age. To determine a minor's intelligence, the court should consider whether he is sufficiently mature to (1) receive correct impressions from his senses; (2) recollect these impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate the moral duty to tell the truth. *People v. Sanchez* (1982), 105 Ill. App. 3d 488, 492, 434 N.E.2d 395, 398.

The court held a hearing in chambers to determine the boy's competency. The child exhibited an ability to remember his age, which was five years at the time of trial, the street and town where he lived, and the names of relatives and friends. He told the court that "to tell a lie is not what really happened," and that people who tell lies would "go to hell." He also stated he would never tell a lie.

■ Based upon this record, we cannot find the court abused its discretion in finding the youth competent to testify. However, defendant points to contradictory statements made by the child during the competency hearing and at trial. The following dialogue from the competency hearing typifies the contradictions:

"THE COURT: Let me ask you this ***. Has anybody told you what you are supposed to say here today?

WITNESS: No.

THE COURT: No body has told you that you have to say anything?

WITNESS: Just what Ray done, right?

THE COURT: Is that what you plan to say?

WITNESS: My Mom told me everything he did to me?

THE COURT: Who told you that?

WITNESS: My mom.

THE COURT: Did you know it before your mother told you?

WITNESS: No. Except before my mother told me I remembered what he done.

THE COURT: Do you remember that?

WITNESS: I remember what Ray done.

THE COURT: Did you remember before she told you?

WITNESS: Uh huh.

THE COURT: Did anybody else talk to you and tell you what you were supposed to say?

WITNESS: No.

THE COURT: Nobody else talked to you about what to say?

WITNESS: No.

THE COURT: Let me ask you this ***, are you going to say what you remember Ray did or are you going to say what your mother said?

WITNESS: I just remember three times of it.

THE COURT: And you remember that without having been told by your mother?

WITNESS: Yes.

THE COURT: Your mother didn't tell you those three times did she?

WITNESS: Yeah, I think she did."

Defendant claims this indicates the child did not have ability to recollect what had happened, and that he could only relate what his mother had told him.

We still must hold there was no abuse of discretion in finding the youth competent to testify. "[O]nce the judge has determined that the minor is competent to testify, any confusion or contradiction in later testimony only goes to his credibility as a witness, not his competency to testify." (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 493, 434 N.E.2d 395, 399.) The record indicates the trial court here correctly considered and applied the above-quoted rule. The court stated:

"Gentlemen, it appears to me that this young boy, ***, who is now 5 or approximately 5½ years old is probably a normal 5½-year-old child. He seems to be well mannered, he attends kindergarten and can count to 100, he carries on a conversation easily. He seems to have a fairly good grasp of the english language for a child of his age. He understands the language and is able to converse. He had indicated he knows what it is to tell a lie. He knows it is wrong to tell a lie. He has said he would not tell a lie. Now as far as him remembering what happened on a specific date, the fact that he does not remember the exact date, I feel is of little significance, in fact the rest of us probably cannot remember what we did on April 19 or 18 of 83. Very frankly the only thing about this young man testifying that bothers me a little bit is the fact that he said his mother told him about the matters at issue, and until he is put on the stand and questions put to him it would be hard to determine whether he is testifying from what he remembers or whether he is testifying from what he remembers or whether it is what someone told him. Also I didn't give him the opportunity to expound any further about what happened between him and his father. I could tell he knew he was here to tell about that, and

he is prepared to tell what happened. But I simply didn't feel that this was the time and place to have him testify. But that is the one point that bothers me a little, Mr. Jackson is whether the child would be testifying from his own memory or what has been told to him by someone else. With that one reservation I would say he exemplifies all the qualities that a child his age would normally have. I think that the fact that he is not simply parroting what some one else has told him, and I don't know really how you guard against that sort of thing. Except by examining and cross examination and the Court will have to determine after hearing his evidence what weight he would want to place on the child's testimony. Until the question is ask and answered I don't know how I would be able to determine. I do believe the Court will be able to decide whether or not the child has been prompted or unduly prompted in the way he answers the questions put to him. The defense will have the opportunity to cross examine him. So at this time I am going to overrule the objection as to his qualifications."

We find no abuse of discretion in the court's finding the child competent to testify and the court's finding that any contradictions or confusion in his testimony only affected the credibility of the witness and the weight to be given his testimony.

■ Defendant next claims he was not proved guilty beyond a reasonable doubt because there was no evidence to connect the child's physical condition with any actions of defendant. He points to the fact Carolyn McNichols did not see defendant fondle the boy's penis or put his finger in his anus. He further claims the child's testimony was so contradictory as to be of no probative value.

There was sufficient evidence here to prove defendant guilty beyond a reasonable doubt of both offenses. In the April 18-19 incident, Carolyn McNichols heard the boy scream, "Oh, you hurt my pee pee." She found defendant in the child's bedroom, with defendant and the child both naked. The boy testified at trial about defendant twisting on his "pee pee," and we have already held he was competent to testify. This evidence was sufficient to support the charge of sexual abuse of a child by a family member.

Regarding the other charge, Carolyn McNichols found defendant naked, with an erection, in the boy's bedroom. The boy was crying, and complained his buttocks were sore. Mrs. McNichols found blood on her son's buttocks. She also testified defendant threatened her with a gun if she tried to leave or tell anyone what happened. The child testified defendant had inserted his finger into the boy's anus.

This was sufficient evidence to support the charge of aggravated indecent liberties with a child.

Defendant's reliance upon *People v. Lambert* (1984), 104 Ill. 2d 375, 472 N.E.2d 427, is misplaced. There the only evidence, other than a confession, on a charge of indecent liberties with a child, was that the defendant and a child slept together in the basement one night, and that two to three weeks after that night, the boy's rectum appeared pinkish and swollen. In *Lambert*, there was no evidence the boy complained to his mother, and no testimony of the victim. The present case is easily distinguishable because of the testimony of the child victim and his mother.

Defendant also contends that the court erred in admitting hearsay testimony of Carolyn McNichols and Nina Russell, the social worker. He claims the testimony was inadmissible hearsay because it described the details of the offenses as related by the victim, rather than merely corroborated the fact a complaint about a sexual attack was made, as is allowed under section 115—10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—10).

 █ We first address the testimony of Carolyn McNichols that after the incident on April 18, she took the boy into another room and asked him what had happened. She testified as to what he had told her. These hearsay statements were admissible as spontaneous declarations. To be admitted under the spontaneous declaration exception to the hearsay rule, there must be (1) an occurrence sufficiently startling to produce a spontaneous and unreflecting statement; (2) absence of time to fabricate; and (3) the statement must relate to the circumstances of the occurrence. (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 491, 434 N.E.2d 395, 397.) These criteria were easily met with regard to the boy's statement that his father had twisted his penis. The fact Mrs. McNichols asked the boy, "What happened?" does not destroy the spontaneity of the response. (105 Ill. App. 3d 488, 491, 434 N.E.2d 395, 398.) Moreover, she had already heard him scream "Oh, you hurt my pee pee." Defendant does not contend the statement made when the boy screamed was not a spontaneous declaration.

Next we turn to testimony of Mrs. McNichols regarding the second incident. She testified that when she went into the bedroom, she picked up the boy in an attempt to quiet him down. She stated he was in a bad emotional state. She saw blood on his buttocks, but he would not let her touch him there, and he cried out and said not to touch there because it hurt. She testified she held him most of the rest of the night and finally put him to bed about 5 a.m. At about 9 a.m., the

boy got up, sat down to watch television, and started crying, saying he could not sit down. She testified the child then told her that defendant had taken him into the bathroom and had put his finger into his anus to check for worms.

We find the statement made by the victim clearly meets the first and third criteria of the spontaneous declaration test. The only disputed question is whether the victim had time to fabricate. While several hours passed between the event and the statement here, "time alone does not control the admissibility of the utterance, but rather the critical factor is the lack of opportunity to fabricate." (*People v. Sanchez* (1982), 105 Ill. App. 3d 488, 491-92, 434 N.E.2d 395, 398.) "[T]he court must determine from the entirety of the surrounding circumstances whether there was an opportunity for reflecting and invention." (*People v. Chatman* (1982), 110 Ill. App. 3d 19, 26, 441 N.E.2d 1292, 1298.) In *Chatman*, the court found admissible a statement made by a four-year-old boy 18 hours after seeing his father shot. The statement was apparently made to the first person encountered by the boy after the shooting.

In *People v. Robinson* (1981), 94 Ill. App. 3d 304, 418 N.E.2d 899, a girl was sexually attacked by a cousin in the afternoon. She was with her mother later that night but said nothing about the incident until the next morning. The court found that the 16-hour delay in telling her mother did not destroy it as a spontaneous declaration. 94 Ill. App. 3d 304, 310, 418 N.E.2d 899, 903-04.

In the present case, the boy was with his mother after the incident, but was too distraught to tell her what happened. Later, he fell asleep. Thus, during the time between the incident here and the making of the statement the victim was either emotionally upset or asleep. There was no time for fabrication. Further, in view of the nature of the occurrence and the fact the victim was four years old, we believe it was highly unlikely he would have fabricated the statement. See *People v. Chatman* (1982), 110 Ill. App. 3d 19, 27, 441 N.E.2d 1292, 1298.

Moreover, the mother's testimony of what the boy told her was cumulative of other evidence. The boy himself testified that his father put his finger into his anus to check for worms. Thus, any error in the admission of the mother's testimony of what the boy told her the morning after the incident is harmless. See *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 150, 481 N.E.2d 883, 887.

■ The social worker, Nina Russell, testified that she visited the victim's home on May 2, 1983, which was several days after the last incident. She testified as to the details the boy described to her re-

garding defendant's actions. We find this testimony is not admissible under the spontaneous declaration rule because of the length of time involved, and we also find the testimony went beyond the fact a complaint was made under section 115—10 of the Code. (Ill. Rev. Stat. 1983, ch. 38, par. 115—10.) However, the improper admission of this evidence is harmless, because the facts related by Russell were also established by other competent evidence. (See *In re C.K.M.* (1985), 135 Ill. App. 3d 145, 150, 481 N.E.2d 883, 887.) As we have noted, the victim himself testified as to the details described by Russell, and Mrs. McNichols testified as to her own observations of the boy's condition.

■ Finally, defendant claims the court erroneously admitted evidence, over his objection, of prior criminal conduct attributed to him. Bradley Rehlmeyer, age 22 at the time of trial, and the natural son of Carolyn McNichols, testified that in 1973 or 1974, when he was 11 or 12 years old, defendant had fondled his penis and put Bradley's penis in his mouth. He also testified defendant had tried to put his penis in Bradley's rectum but was unsuccessful.

We do not believe this incident occurring some 10 years before the offenses charged and with a victim other than the complaining witness was admissible. This evidence was not relevant to establish any material question other than the propensity of the defendant to commit a crime. Evidence of other crimes is not admissible if it is relevant merely to establish the defendant's propensity to commit crime. (See *People v. Stewart* (1984), 105 Ill. 2d 22, 61-62, 473 N.E.2d 840, 860, *cert. denied* (1985), 471 U.S. 1131, 86 L. Ed. 2d 283, 105 S. Ct. 2666.) However, in light of the victim's eyewitness testimony and the testimony of Mrs. McNichols, we find any error here to be harmless. See *In re Gonzalez* (1981), 95 Ill. App. 3d 750, 757, 420 N.E.2d 720, 726; *People v. Perruquet* (1983), 118 Ill. App. 3d 339, 343, 454 N.E.2d 1051, 1054.

For the foregoing reasons, the judgment of the circuit court of Massac County is affirmed.

Affirmed.

JONES and WELCH, JJ., concur.