THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. REBECCA MARGARET BORN, Defendant-Appellant.

Fourth District   No. 4—86—0614

Opinion filed June 2, 1987.—Modified on denial of rehearing June 30, 1987.

586

Jon C. Baxter, of Burger, Fombelle, Baxter, Zachry & Rathbun, of Decatur, for appellant.

Jeffrey K. Davison, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and Gwendolyn Klingler, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GREEN delivered the opinion of the court:

Following a trial by jury, defendant Rebecca (Becky) Born was found guilty as charged of aggravated criminal sexual abuse in violation of section 12—16(c)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1)). The circuit court of Macon County sentenced defendant to four years' probation, including intensive probation with conditions during the first year. One of those court-ordered conditions required defendant to serve five months in the county jail.

Defendant has appealed both her conviction and her sentence, contending that: (1) the minor victim, 4 years and 11 months old at time of trial, was incompetent to testify as a witness; (2) the proof did not support a finding of guilty beyond a reasonable doubt of aggravated criminal sexual abuse; (3) the court below improperly excluded

testimony depicting hostility within the defendant's family purportedly culminating in the charging of this offense; (4) the court's decision to tender the State's proffered jury instructions, and not those submitted by the defendant, was error; and (5) sentencing the defendant to five months' incarceration represents an abuse of discretion.

Defendant was charged by information filed March 3, 1986, with aggravated criminal sexual abuse for an incident allegedly occurring on September 14, 1985. Specifically, defendant was accused of committing an act of sexual conduct with K.T., a minor then under the age of 13, when defendant "knowingly touched with her finger the vagina of [K.T.], for the purpose of the sexual arousal of the defendant."

Criminal sexual abuse is committed if an accused performs an act of "sexual conduct" with another. (Ill. Rev. Stat. 1985, ch. 38, par. 12—15.) "Sexual conduct" is defined as:

> "[A]ny intentional or knowing touching *** by the *** accused, either directly or through clothing, of the sex organs, anus or breast of the victim ***, or any part of the body of a child under 13 years of age, for the purpose of sexual gratification or arousal of the victim or the accused." Ill. Rev. Stat. 1985, ch. 38, par. 12—12(e).

By statute, the offense of criminal sexual abuse becomes aggravated if: "[T]he accused was 17 years of age or over and commits an act of sexual conduct with a victim who was under 13 years of age when the act was committed ***." (Ill. Rev. Stat. 1985, ch. 38, par. 12—16(c)(1).) The minor victim K.T. was born on August 29, 1981; she was therefore four years old on September 14, 1985, the date of the alleged incident. Defendant was 22 years old at the time.

■■ ■ Defendant first contends the trial court's finding of competency in allowing the minor complainant to testify as a witness was error. The question of a minor witness' competency is for the trial court, and its competency ruling will not be disturbed absent an abuse of discretion or misapprehension of some legal principle. (*In re A.M.C.* (1986), 148 Ill. App. 3d 775, 778, 500 N.E.2d 104, 106.) Any such competency determination must be based upon preliminary inquiry into the minor witness' intelligence, understanding and moral sense. *People v. Davis* (1957), 10 Ill. 2d 430, 140 N.E.2d 675.

■■ Rather than relying strictly upon a child's age, it is instead recognized that competency of a minor to testify will be determined by the degree of intelligence actually exhibited. (*People v. McNichols* (1986), 139 Ill. App. 3d 947, 951, 487 N.E.2d 1252, 1255.) To determine an individual minor's intelligence, a court should consider

whether he or she is sufficiently mature to: (1) receive correct impressions from his or her senses; (2) recollect those impressions; (3) understand questions and narrate answers intelligently; and (4) appreciate the moral duty to tell the truth. *People v. Sanchez* (1982), 105 Ill. App. 3d 488, 492, 434 N.E.2d 395, 398; see also *People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10, 11-12.

Defendant argues there was not sufficient inquiry below into the child's appreciation of her moral duty to tell the truth. Defendant complains the trial court merely elicited yes or no answers from the minor in response to lengthy questioning without sufficient inquiry into what the minor thought an oath was or what she thought would happen if she did not tell the truth.

From our review of the record, we find the trial court did not abuse its discretion in allowing the minor witness to testify. Upon initial questioning by the court, the minor was able to identify: the name of the school her older brother was attending; the fact that he was on summer vacation at the time of trial; the name of the school she would be attending in the fall; the names of her teachers at preschool the previous year; the names of children she was attending preschool with; and the name of her favorite game at preschool. She also knew the name of her puppy, what kind of dog it was (a Cockapoo), and that her parents owned two blue Mazda automobiles. She specifically related the name of the street her grandparents live on and that her father works for the health department in Decatur.

Responding to further questioning, the minor replied she understood the difference between the truth and a lie, answering that a lie is a "bad thing." She also affirmatively answered she would be prepared to take an oath to respond to questions truthfully, and she understood it was important to do so. K.T. also indicated to the court she would be able to say things about what she did and said, and not what another person might have told her to say.

The court also asked her:

"THE COURT: What is important, [K.T.], is that you answer the questions truthfully. Do you know what that means?

A. No.

THE COURT: Well, do you know what it means to tell the truth and what it means to tell a lie?

A. Yeah."

■ Defendant characterizes this exchange as "contradictory." We believe it evinces instead the minor's ability to relate to basic concepts of truth and falsehood simply phrased, as opposed to a slightly more complex query. One imperfect response to a question posed by

the court would not invalidate a finding of competency in light of what is indicated by the totality of her responses.

Perhaps the most cogent indication of the minor's intelligence, ability to receive and recollect impressions, understand questions and appreciate the truth is her response to the following:

> "THE COURT: [I]f someone tomorrow were to ask you, '[K.T.], yesterday were you in court answering questions?' and you answered no, what would that be?
>
> A. A lie."

■ In sum, we agree with the trial court that the minor exhibited sufficient intelligence, truthfulness, and a grasp of the English language to be competent to testify. This is not a case such as *People v. Sims* (1969), 113 Ill. App. 2d 58, 251 N.E.2d 795, cited by the defendant as similar, where the examination into competency was far more limited. In *Sims*, the 13-year-old witness told the court he did not know what would happen if he failed to tell the truth, and he did not know what would happen to him if he told a lie. The minor had no response when questioned what the truth meant. The witness did state he was going to tell the truth during the hearing. The trial court found the witness competent to testify based upon this examination alone and further questioning into the incident at issue. The appellate court in *Sims* reversed, however, holding this abbreviated preliminary inquiry did not meet the requirements of establishing competency to testify. In *Sims*, questioning did not elicit any showing of the minor's ability to testify truthfully. Clearly, the inquiry into competency here was far more comprehensive.

We note the minor witness was 4 years and 11 months old at time of trial. In affirming the trial court, we are aware of the recognized trend in recent years toward a broad standard of competency, with courts of review having regularly upheld a trial court's decision to permit increasingly younger children to testify. (See *In re A.M.C.* (1986), 148 Ill. App. 3d 775, 778-79, 500 N.E.2d 104, 106; *People v. McNichols* (1986), 139 Ill. App. 3d 947, 952-53, 487 N.E.2d 1252, 1256.) On the individual facts presented to us, our holding merely follows that trend.

■ Defendant's second asserted ground for reversal involves the sufficiency of the evidence at trial. She argues she was not proved guilty beyond a reasonable doubt of aggravated criminal sexual assault.

As allegations of sexual misconduct of the type here charged are "easily made, hard to be proved, and harder to be defended by the party accused" (*People v. Nunes* (1964), 30 Ill. 2d 143, 146, 195

N.E.2d 706, 707), our supreme court has stated "the very odium and prejudice arising from such a charge requires that the courts do not vitiate the traditional requirement of proof of guilt beyond a reasonable doubt" (*People v. Kolden* (1962), 25 Ill. 2d 327, 330, 185 N.E.2d 170, 172). Where proof of abuse depends in large part on the testimony of a complaining witness, and the defendant denies the charge, the rule has developed that a conviction will be upheld if the testimony is either clear and convincing or substantially corroborated by some other fact, evidence or circumstance in the case. *People v. Morgan* (1977), 69 Ill. 2d 200, 206, 370 N.E.2d 1063, 1066; *People v. Powell* (1985), 138 Ill. App. 3d 150, 156, 485 N.E.2d 560, 563.

While testimony need not be crystal clear and perfect in order to be deemed clear and convincing (*People v. Server* (1986), 148 Ill. App. 3d 888, 894, 499 N.E.2d 1019, 1024), we conclude the child's testimony here did not meet the clear and convincing test. We do find, however, sufficient corroboration of her testimony to support a verdict of guilty.

The basic facts are uncontroverted from the testimony at trial. It is only one important fact—whether abuse actually occurred—that is in dispute.

After watching her older brother play soccer at a local park on the morning of September 14, 1985, the victim K.T. went to her grandmother's house at 11 a.m. The only persons present in the home with the minor at the time were her grandmother (Joann Born) and her aunt (the defendant), who also resided there. At about 1:30 p.m., the grandmother left to go to the grocery store, leaving the minor and the defendant alone in the house for about one hour. The minor spent a portion of this time watching television and talking over the telephone with her mother and another aunt. When the grandmother returned about 2:30 p.m., defendant went to the kitchen to help prepare the evening's dinner. The minor went downstairs to the playroom.

Other family members began arriving at the house later that afternoon. Alfred Born, the minor's grandfather, returned home from work. The minor's parents and brother also came to the home for dinner, as did the minor's other aunt and her husband. In all, at least eight persons besides the minor were present in the house. Many of them went downstairs to watch television.

Just before dinner, defendant and K.T. were in the living room area adjacent to the kitchen on the first level. Apparently, the grandmother was in the kitchen. The minor asked defendant if she would pick her up and carry her downstairs. As defendant lifted the child

up, putting her arms around her, the victim was heard to state, "Aunt Becky, you tickled my butt." Defendant later explained it away by indicating she had pulled the child's pants up too high.

Later at home, the child's parents inquired further as to what the minor meant by that statement. After a discussion with the minor, the child's mother made a report to the Department of Children and Family Services.

Individual testimony revealed the following: the minor complainant's father stated the defendant is his sister-in-law. He testified he and his wife arrived at the grandparents' house between 5 and 6 p.m. on September 14, 1985. He and others present were all seated in the family room in the lower level of the house watching television when the minor stated defendant had "tickled her butt." The father recalled defendant responded she had pulled the child's pants up too hard, and the child said it tickled her. While at home later that evening, K.T.'s father said K.T. complained that defendant had "put her hand in her panties, and moved it [sic] rapidly" in the genital area.

K.T., the minor, testified concerning her recollection of the incident. She recalled she was at her grandmother's house shortly after her fourth birthday. She stated defendant "put [her hands] in" and "[t]ickled all around *** [in] the vagina." The minor also pointed to the area of her body she was referring to. Her mother later testified K.T. got the word "vagina" from her, stating: "I have always taught my children the proper names for the body." The minor further testified defendant put her hand inside her panties, tickled her, and "put her finger inside" her.

According to the minor, she told her mother in the kitchen later what had happened. She also stated she went home and fell asleep, but awoke and related to her mother a second time about the incident.

On cross-examination, the minor denied that defendant had pulled her jeans up, but rather stated defendant just "reached her hand in." This happened, the minor said, in the living room with only the defendant and her present there. Everyone else was in the family room, with the possible exception of her grandmother, who was in the adjoining kitchen area.

Upon further questioning the minor related she had gone over the story with her mother "sometimes." She also indicated when she told her mother defendant had tickled her butt, her mother had specifically asked if defendant put her hand in her panties, or put her finger in her. On re-cross-examination, the minor also admitted she pretended a lot.

The girl's mother testified K.T. went to her grandmother's house at about 11 a.m. on September 14, 1985, after watching a soccer game. That evening, K.T. said defendant "tickled my butt today." A few minutes later, defendant replied, "Oh, I was pulling up her pants and I pulled them up too high." The mother further testified her child knew how to dress herself and could go to the bathroom on her own.

The minor initially fell asleep upon the family's return to their home after dinner. When the minor awoke later, her mother asked her what she had meant when she said defendant "tickled her butt." The mother stated the minor responded that defendant had "put her hands in her panties and [she] made gestures like *** she tickled fast." The court noted for the record the mother's gesture of "holding two fingers together and moving rapidly in a small area." The mother stated she then called the Department of Children and Family Services (DCFS) Hotline that same evening to report the incident. She did not make a report to the Growing Strong Sexual Assault Center until February of 1986.

Joann Born, the minor's grandmother, testified she took K.T. home with her the morning of September 14, 1985. Only K.T., the defendant and she were at home until about mid-afternoon. During a one-hour span in the afternoon, Mrs. Born went to the store, leaving K.T. and the defendant at home alone.

Just before dinner, defendant and K.T. were in the hallway outside the kitchen when the minor asked the defendant to pick her up. Mrs. Born testified the defendant "just picked her [K.T.] up under her arms and lifted her up and that is when [K.T.] put her legs around her waist and [defendant] had her hand around her back and carried her downstairs." The minor stated at this time, "Aunt Becky, you tickled my butt." Mrs. Born related defendant responded, "Oh, that's nice, [K.T.]." Defendant then carried K.T. downstairs into the family room, where several other family members were present.

The defendant testified she was living at home with her parents on September 14, 1985. During that afternoon while K.T. was visiting, the defendant's mother went to the grocery store. K.T. stayed at home with defendant to watch television while defendant cleaned her room. Defendant's mother was gone from the house for about one hour. K.T. spent a portion of that time on the telephone with her mother and another aunt. When Mrs. Born arrived back at the house at about 2:30 p.m., defendant went to the kitchen to help prepare dinner. The minor went downstairs to the playroom.

Family members began arriving at the house around 4:30 p.m. Most of them went downstairs to the family room to watch television

while dinner was being prepared. At one point, defendant sat down in the living room. The minor was also present in the room. The layout of the house was such that two doors led from the living room into a hallway and an adjacent kitchen area. Defendant testified:

> "I went into the hallway, I said 'I am going downstairs, [K.T.], what do you want?' She said 'Pick me up,' and I picked her up. She put her legs around my waist and I put my arms around her back for support and she said, 'Oh, Becky, you tickled my butt.' I didn't say anything, I said 'That is nice,' and then I proceeded to go downstairs with her ***."

Defendant related the minor later told her mother that "Becky tickled my butt and I liked it." The defendant denied ever putting her hand inside the minor's pants or her fingers anywhere near the minor's vaginal area.

Three physicians also testified as to their examinations of K.T. Nothing in their testimony either added to or detracted from the State's case.

■ Sufficient corroboration to support the verdict is apparent instead from evidence of the child's prompt complaint to her parents. The child related what had happened that day when defendant "tickled her butt," albeit partly in response to her mother's specific questions. The mother's testimony reflecting what the child told her matched the child's own testimony.

■ The testimony concerning the child's prompt complaint was admitted over only a general objection which raised only the issues of materiality and relevancy. (*Johnson v. Bennett* (1946), 395 Ill. 389, 69 N.E.2d 899; *Gale v. Hoekstra* (1978), 59 Ill. App. 3d 400, 375 N.E.2d 456.) Defendant makes no contention here that its receipt was error under the corroborative complaint provisions of the Code of Criminal Procedure of 1963. (Ill. Rev. Stat. 1985, ch. 38, par. 115—10.) We conclude admission of the testimony was not plain error. See *People v. Leamons* (1984), 127 Ill. App. 3d 1056, 469 N.E.2d 1137.

Defendant nevertheless maintains it is "ludicrous" to believe this incident would occur in a house full of people. Alluding to strained relations within the mother's family, defendant asserts the "imagined incident" of the 4-year-old child was somehow elevated to "a holy crusade" by the mother. We note only that the incident here charged would not take long to commit, given its nature, and need not necessarily occur only when there are no other people present in the entire house. We conclude by rejecting defendant's sufficiency of the evidence argument.

■ Defendant's third asserted error revolves around testimony

defendant attempted to present to the jury concerning familial hostilities that arose between September 1985 and February 1986. Animosity between defendant and her sister, defendant asserts, brought on the initiation of these charges at a later date.

During direct examination, Joann Born testified she did not have a good relationship with her daughter from September 14, 1985, until February of 1986. Mrs. Born characterized her daughter as "very hostile" toward her. The State then objected to further questioning along this line. A conference was held between counsel and the court outside the presence of the jury.

Counsel for the defendant explained to the court he was attempting to show why this incident, which allegedly occurred on September 14, 1985, was not reported until February of 1986. Counsel asserted continued deterioration of family relationships resulted in pursuit of this matter to authorities in February. The court responded that if it were to permit such evidence then it would also allow the State on rebuttal to ask the child's parents their state of mind in pursuing the charge at that time. The court explained to defense counsel:

> "THE COURT: This is a practical decision for you, I just want to make sure you understand that. If you are attempting to impeach them [the parents] showing interest, bias, or motive on their part of why they pursued the matter in February, then I will see no reason why on redirect it wouldn't be appropriate to demonstrate precisely why they pursued the matter with the authorities in February."

Counsel then asked whether this would result in "the undoing of the motion *in limine*." The court responded if this line of questioning was pursued, he would "permit all relevant evidence to show their mental state as to why they did what they did in February." Commenting he did not wish his client to proceed along this line, defense counsel made an offer to show the relevancy of Mrs. Born's testimony "here in my argument." Mrs. Born then testified before the court her daughter, the child's mother, "was very hostile" toward the defendant during September of 1985. Mrs. Born related the child's mother told her on several occasions that she should require defendant to leave the house because defendant was not working or dating, and that defendant needed to see a psychiatrist. Mrs. Born also stated the child's mother "has a very vulgar mind," and is quick to think of everything in a sexual manner. The court, however, sustained the State's objection to the relevancy of this testimony. Mrs. Born was only permitted to testify before the jury of a "hostile" relationship between her daughters during September of 1985.

The motion *in limine* appearing in the record indicated a prior trial of the defendant on a similar charge was had, that other parents had complained of alleged sexual abuse to their children by the defendant, and that these facts were highly prejudicial as well as immaterial to the case at bar. Apparently, from the record, defendant was acquitted of those charges. The motion requesting all parties refrain from communicating any of these facts was allowed by the court.

Defendant argues the trial court improperly excluded relevant testimony concerning hostilities within the family culminating in the charging of this offense. The State, however, regards the so-called "exclusion" of this testimony to be the result of a "tactical decision" by defense counsel not to risk inquiry into motive and matters otherwise barred by the motion *in limine*.

As a practical matter, we fail to see that any error was committed here. The trial court apparently concluded that to permit introduction of the evidence would open the door to a side issue which the ruling *in limine* was entered to prevent. The testimony which the *in limine* ruling kept out would have been prejudicial to the defendant. Under the circumstances, the trial court did not abuse its discretion in its ruling.

■■ Defendant next contests the trial court's decision to refuse her two tendered instructions concerning sexual conduct and the proof necessary to sustain a charge of aggravated criminal sexual abuse. Defendant merely avers without support that the "State's instructions on these topics, allowed to be given to the jury, are inappropriate," and that defendant's own proffered instructions are "much better." The instructions presented by the State and actually given to the jury are instructions which have been drafted and approved by the Illinois Pattern Jury Instruction Committee, although they have not yet been approved in final form by our supreme court. While these instructions have not yet attained official status, we deem them sufficient. We have reviewed both sets of instructions, and we find no error in the court's decision to give the State's proffered instructions over those tendered by the defendant.

■■ Finally, defendant contests as an abuse of discretion her five-month sentence of incarceration as a condition of her intensive probation. She believes the jail sentence is excessive in light of the fact she has no prior criminal record and asks that the sentence be vacated.

The trial court in imposing the sentence noted statutory factors in mitigation and aggravation. (Ill. Rev. Stat. 1985, ch. 38, pars. 1005—5—3.1, 1005—5—3.2.) The court further stated it believed a jail sen-

tence was necessary to deter others from committing the same "repugnant" crime. The court also believed a sentence would send a message to the community "that child molesters will not be treated as just poor misguided souls, *** but they will be punished as criminals, which they are as set forth by the legislature."

The imposition of a sentence is a matter of judicial discretion and, absent an abuse of discretion, the sentence of a trial court may not be altered upon review. (*People v. Perruquet* (1977), 68 Ill. 2d 149, 368 N.E.2d 882.) We find no such abuse of discretion in the court's sentencing order here.

We therefore affirm the judgment of the circuit court of Macon County.

Affirmed.

SPITZ, P.J., and LUND, J., concur.