THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
DAVID LAWLER, Defendant-Appellant.

Fourth District   No. 4—88—0268

Opinion filed March 23, 1989.

Daniel D. Yuhas and David Bergschneider, both of State Appellate Defender's Office, of Springfield, for appellant.

Larry R. Fichter, State's Attorney, of Decatur (Kenneth R. Boyle, Robert J. Biderman, and William P. Ryan, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE KNECHT delivered the opinion of the court:

Defendant was charged with one count of aggravated criminal sexual assault. (Ill. Rev. Stat. 1987, ch. 38, par. 12—14(b)(1).) The defendant was 25 years old at the time of the incident and the victim was 12 years old. After a jury trial, the defendant was convicted and sentenced to 15 years' imprisonment. Defendant appeals, alleging the trial judge abused his discretion in finding the complaining witness competent to testify. Defendant also appeals the trial court's order assessing costs of a transcript on appeal against his bond proceeds.

The complaining witness, D.V., was a mildly mentally retarded girl, 13 years old at the time of trial. On January 24, 1988, immediately before trial, a hearing was held to determine her competency to testify. She knew her name, age, address, grade in school, and the names and ages of the other children in her household. She told the prosecution she had promised to tell the truth when sworn in and said she would. She understood it was bad to tell a lie in the courtroom. She replied, "No, I don't," to the question, "[D]o you know the difference between when somebody tells the truth and somebody tells a lie?" She said she did not know if it would be a lie if defense counsel said the judge had a hat on. The witness also said she had trouble remembering things and could not recall the previous Halloween, Christmas, and what she did on her birthday, which was 2½ weeks ago.

The judge found the witness was responsive to questions and communicated well, knew the meaning of the oath within the requirements, but characterized her recollection as "not good." His impression was the witness definitely had not been coached. The judge found her competent to testify and said her competency to recall the occurrence could be brought out in cross-examination.

At trial, D.V. testified she lived with her parents, three brothers, one sister, Jolene, a friend of her mother's, and Jolene's three children. She said the defendant had touched her "private part" with his "private part" before Christmas. The incident had occurred in the bedroom of her house when the defendant was living there. K.R., Jolene's eight-year-old daughter, and the victim's 11-year-old sister were also in the bedroom at that time. The victim did not at first tell anyone about the incident but Jolene's daughter did. D.V. then told "the cops" and a doctor. On cross-examination, D.V. stated she had trouble remembering the incident but then stated she could remember.

Virginia Vogel, the victim's stepmother, testified D.V. was mildly mentally disabled. D.V. slept in a bedroom with her 11-year-old sister, who was also mentally retarded, and with K.R., Jolene's daughter.

The defendant, David Lawler, Virginia Vogel's 25-year-old cousin, lived in the household during October. On October 23, 1987, the defendant received a check and said he was "going out partying." Mrs. Vogel left the house at 6 p.m. and when she returned at 8 p.m. the defendant was gone. On November 4, 1987, K.R. told her something unusual had happened. After talking to D.V., Virginia Vogel reported the assault to the police.

Police officer Michael Rearden testified he had spoken with D.V. on November 4 and the girl said she had been sexually assaulted.

K.R., Jolene's daughter, testified she was eight years old and in the second grade. During the night, about a week before Halloween, she and D.V. were asleep on a bunk bed in their bedroom. Lawler came into the bedroom and woke K.R. up. She asked where D.V. was. The defendant said D.V. was in another bed in the bedroom. The defendant then went over to the other bed, took off his shorts and got into bed with D.V. He was naked. K.R. later told D.V.'s mother what had happened.

A physician, Dr. Terry Balagna, testified he examined D.V. on November 4, 1987, and found she had a perforated hymen. He could not tell when it had been perforated or the cause. The perforation could have been caused by an adult male penis.

The defendant, David Lawler, stated he did not have sex with D.V. on the night in question. He went to three bars on the evening of October 23, had one drink at each bar, and then went to two restaurants with a friend named Kevin. He got home at daylight. He stated he did not get drunk and denied making any incriminating statements to the police. Police officer Diane Beggs testified she questioned the defendant on the evening of November 5, 1987. At first the defendant denied the allegations of sexual assault. Then, about midway through the interview, the defendant said he had sexual intercourse with the victim. The two other girls were also present in the bedroom. He said he had been very drunk that night. In rebuttal, the officer stated Lawler never mentioned going to the restaurants with a person named Kevin. Defendant told Officer Beggs he had met an out-of-town girl at a bar and had sex with her. He stated he had this girl on his mind when he returned to the girls' bedroom and had sexual intercourse with D.V. Toward the end of the interview, the defendant began crying and said he wanted to tell D.V.'s mother he had not meant to hurt her stepdaughter when he had intercourse with her and he was sorry.

The jury returned a verdict of guilty and the defendant was sentenced to 15 years' imprisonment. At the sentencing hearing, the

defendant said he wanted to appeal. The judge ordered the cost of the transcript be paid from the balance of Lawler's bond proceeds.

■■ A determination of competency by a trial judge is not to be set aside unless it amounts to an abuse of discretion or is based on a manifest misapprehension of some legal principle. *People v. Ballinger* (1967), 36 Ill. 2d 620, 622, 225 N.E.2d 10, 11-12, *cert. denied* (1967), 388 U.S. 920, 18 L. Ed. 2d 1366, 87 S. Ct. 2141.

■■ Chronological age is not the determining factor in competency hearings. The proper inquiry is whether the witness was sufficiently mature to receive correct impressions by her senses, to recollect and narrate intelligently, and to appreciate the moral duty to tell the truth. *People v. Garcia* (1983), 97 Ill. 2d 58, 75, 454 N.E.2d 274, 280.

Of the four criteria for determining competency of a witness, the trial judge cited one factor of being of some concern—the witness' ability to recollect. Although D.V. did recall the names and ages of the other children in her household and the date of her birthday, these are not events. She could not remember what she did on Halloween, Christmas, or her birthday. She did remember her birthday was several weeks previous. However, the witness exhibited no difficulty remembering the occurrence of October 24, 1987.

In *In re A.M.C.* (1986), 148 Ill. App. 3d 775, 780, 500 N.E.2d 104, 107, a five-year-old victim of aggravated criminal sexual assault was, upon questioning, unable to demonstrate a temporal awareness of time, days, dates, and holidays. The appellate court said this failing did not appear to hurt her description of the incident.

Even though the witness' ability to remember events appeared questionable to the trial judge after the competency hearing, the modern tendency is to permit a questionable witness to testify and allow this testimony to be impeached. (*People v. Seel* (1979), 68 Ill. App. 3d 996, 1006, 386 N.E.2d 370, 378.) The defense was not able to impeach D.V.'s testimony. In fact, it was corroborated in part by the testimony of J.R. The only contradiction of D.V.'s testimony was the defendant's uncorroborated statement that he was out till daylight on the night in question. Also, the witness did not seem to be confused or unable to answer the questions in testifying during trial about the occurrence.

In the competency hearing, the witness gave contradictory answers to questions concerning her ability to appreciate truth and falsehood. The prosecutor asked her if she knew the difference "between when somebody tells the truth and when somebody tells a lie." She replied, "No, I don't." The witness may have believed the prosecutor was asking if she could tell whether or not a person is lying. The witness said she did not know if it was good or bad to tell a lie

but later stated she had promised to tell the truth when sworn in and she would tell the truth. When asked if it was important to tell the truth in a courtroom, she replied "yes." The record reflects she may have been confused when called on to answer questions with a "yes" or "no." She may also have had trouble answering hypothetical questions—"If I said the judge had a hat on would that be true?"

The defendant argued D.V. testified she knew the difference between a lie and the truth only when the prosecution asked leading questions. In *People v. Spencer* (1983), 119 Ill. App. 3d 971, 979, 457 N.E.2d 473, 485, an adult complaining witness was mute, did not know standard sign language, and was mildly to moderately mentally retarded. Her testimony, using gestured responses and anatomically correct dolls, was upheld. In that case, the court held the allowance of leading questions was within the discretion of the trial judge. The court found that given the witness' physical disability, there was no abuse of discretion in allowing leading questions. See also *People v. Bell* (1985), 132 Ill. App. 3d 354, 362-63, 476 N.E.2d 1239, 1245, *cert. denied* (1985), 474 U.S. 852, 88 L. Ed. 2d 127, 106 S. Ct. 153 (mentally retarded adult).

In *Spencer* (119 Ill. App. 3d at 977, 457 N.E.2d at 478), the court noted it was difficult to tell whether the mute and mentally retarded witness was answering the questions or expressing her agreement with the idea contained therein. The court ruled this problem went to her credibility, not her competency to testify. In *People v. Daniels* (1987), 164 Ill. App. 3d 1055, 1075, 518 N.E.2d 669, 683, the 10-year-old witness said she did not know what an oath was and did not know what the judge or her mother would do to her if she lied. She was found competent to testify because she said she knew to tell the truth meant to tell what happened. Also, there was no evidence the witness lied on the stand.

In a recent fourth district case, *People v. Born* (1987), 156 Ill. App. 3d 584, 588-89, 509 N.E.2d 125, 127, a four-year-old girl was allowed to testify. She had responded she did not know what it meant to answer questions truthfully but then stated she knew what it meant to tell the truth and what it meant to tell a lie. The court found an imperfect response does not invalidate a finding of competency in light of the totality of the responses. Instead of characterizing the witness' answers as contradictory, the court said this confusion "evinces instead the minor's ability to relate to basic concepts of truth and falsehood simply phrased, as opposed to a slightly more complex query."

In the instant case, the witness may well have given ambivalent

answers as to knowledge of truth and falsehood. However, the record reflects she did respond she would tell the truth, the truth being to tell what happened, when asked in an understandable manner. The witness may have had trouble answering hypotheticals. She may also have had trouble understanding the content of some questions concerning truth and falsehood. The judge said the witness had definitely not been coached. There is ample testimony to support the trial judge's finding of D.V.'s competency.

Since the controlling factor is the degree of intelligence, not the child's chronological age, it is irrelevant D.V. did not possess the intelligence of an average 13-year-old. Moreover, the trend of recent cases is to allow very young children to testify. (*People v. McNichols* (1986), 139 Ill. App. 3d 947, 952-53, 487 N.E.2d 1252, 1256-57 (witness was four at the time of the offense and five at the time of trial).) The proper inquiry was what intelligence she did possess and whether she met the aforementioned criteria for determining competency of a witness.

■ Considering the totality of the complaining witness' testimony and the recent trend to allow testimony, we hold the trial court did not abuse its discretion in allowing the testimony to stand.

■ Even if the complaining witness had not testified, the overwhelming weight of the remaining evidence would still support the verdict. There is the testimony of K.R., the eight-year-old who is not mentally retarded and who witnessed the defendant get into bed naked with the victim. There is also the testimony of the physician, who stated the victim's hymen had been perforated at some time, such perforation not inconsistent with sexual intercourse. There is also the testimony of Officer Beggs, who stated the defendant had confessed to sexual intercourse with the victim.

We now turn to defendant's argument that the money remaining from his bond should not have been applied to the cost of a transcript on appeal. Supreme Court Rule 607(b) provides a free transcript shall be made available to an indigent defendant who is entitled to an appeal. (107 Ill. 2d R. 607(b).) It does not address the issue of whether the bond proceeds may be applied to the cost of a transcript for an indigent. This issue has been recently addressed by the fourth district in *People v. Bond* (1989), 178 Ill. App. 3d 1020, where the court said the defendant was entitled to proceed under Rule 607(b) and the trial court improperly assessed the cost of the transcript against the defendant. *Bond* did not address the parties' arguments in the instant case, so a discussion of this issue is still in order.

■ The allowance and recovery of costs, being unknown at com-

mon law, is entirely statutory and must be strictly construed. (*People v. Nicholls* (1978), 71 Ill. 2d 166, 173, 374 N.E.2d 194, 197.) The cases cited by the defendant refer to the common law rule that the costs of criminal prosecution are not assessed against the defendant. However, the instant case concerns the cost of appeal—not the cost of the trial court proceedings. Therefore, the strict construction rule would not necessarily apply in this case. The general rule is that all provisions shall be liberally construed in order to effect the intent of the legislature. (Ill. Rev. Stat. 1987, ch. 1, par. 1002.) This rule of construction also applies to supreme court rules. 107 Ill. 2d R. 2(a).

    ■ The supreme court specifically provided for free transcripts to indigents in Supreme Court Rule 607(b). In Rule 607(a) (107 Ill. 2d R. 607(a)), the supreme court allowed for a statutory exception for compensation and reimbursement for expenses of an appointed attorney. (See Ill. Rev. Stat. 1987, ch. 38, par. 121—13.) (This was held constitutional and not a violation of due process in *People v. Kelleher* (1983), 116 Ill. App. 3d 186, 189-91, 452 N.E.2d 143, 145-47.) Rule 607 makes no exception for applying bail money to the cost of the transcript. The supreme court did make an exception for attorney fees. Even if the rule need not be strictly construed, it is in keeping with the supreme court's intent to adhere to the rule unless there is an expressed exception allowed.

The common law rule that the defendant in criminal cases should not bear costs in trial court proceedings evinces a general policy favoring statutory exceptions only. However, we are not holding that *any* fees or costs imposed on a criminal defendant on appeal must be statutorily imposed.

In *People v. Nicholls* (1978), 71 Ill. 2d 166, 176, 374 N.E.2d 194, 198, the court acknowledged some inconsistency in allowing bond proceeds to be applied to attorney fees and not to the cost of an indigent's transcript. Finding no legislative intent to the contrary, the court held a reasonable construction of the two rules compelled the assessment of costs for attorney fees. Conversely, a reasonable construction of the two rules would indicate the supreme court did not intend for bond proceeds to be applied toward a transcript on appeal.

Citing *People v. Nicholls* (1978), 71 Ill. 2d 166, 177, 374 N.E.2d 194, 198, the State argues under section 110—7(h) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1987, ch. 38, par. 110—7(h)), the deposit of 10% of the bail constitutes a fund from which a judgment for fine and costs against the defendant may be satisfied, regardless of whether or not the defendant personally put up the money. The problem with this argument is that the fee for the transcript is not a

fine or cost imposed as a result of a judgment against the defendant.

The defendant also argues any statute mandating that a criminal pay the cost of a transcript would conflict with Rule 607(b) and would, therefore, be unconstitutional as a violation of the separation of powers doctrine. However, as the defendant notes, the State has made no argument there is such a statute. Furthermore, the defendant raises this argument for the first time in his reply brief and, therefore, it is waived. *Pinsker v. Kansas State Bank* (1986), 142 Ill. App. 3d 216, 222, 491 N.E.2d 826, 829; 107 Ill. 2d R. 341(e)(7).

■ Because the trial court lacked authority to seize the bond proceeds to pay for the transcript, the defendant did not waive this issue by failing to object at trial court. (Compare *People v. Hodges* (1983), 120 Ill. App. 3d 14, 16, 457 N.E.2d 517, 518-19 (defendant does not waive right to challenge assessment of costs by failing to object).) The trial court improperly assessed the defendant for the cost of the transcript.

We affirm the judgment of conviction and sentence entered in the circuit court of Macon County. We reverse the order to pay the costs of the transcript from the defendant's bond proceeds and remand to the court with instructions to refund to the defendant the sum of $48.

Affirmed in part; reversed in part and remanded.

McCULLOUGH, P.J., and SPITZ, J., concur.